Mrs. Lucille JONES et al.

v.

S.S. JESSE LYKES, Her Engines, Tackle, Equipment, etc. & Lykes Bros. Steamship Co., Inc.

v.

P. C. PFEIFFER CO., Inc.

Wayne Barrow PLACIDE, a Minor

v.

S.S. JESSE LYKES, Her Engines, Tackle, Equipment, etc. and Lykes Bros. Steamship Co., Inc.

v.

P. C. PFEIFFER CO., Inc.

Nos. 1005, 1103.

United States District Court
E. D. Texas,
Beaumont Division.

April 15, 1966.

Ernest Browne, Beaumont, Tex., for libellant, Margaret P. Jones, intervenor.

Randolph G. Papich, Beaumont, Tex., for libellant Wayne Barrow Placide, a minor.

E. D. Vickery, Royston, Rayzor & Cook, Houston, Tex., for respondent.

S. G. Kolius, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston Tex., for impleaded respondent.

FISHER, District Judge.

The above entitled cause came on for trial before the Court in Admiralty, the Libellants appeared in person and by their proctors, the Intervenor appeared in person and by her proctor, and the Respondents and Impleaded Respondent appeared by and through their proctors, and testimony having been offered by all parties, and the Court having been fully advised in the premises, now makes and files its

### FINDINGS OF FACT

1.

This is an action by the surviving beneficiaries of longshoreman Earl M. Jones, who met his death on board the SS JESSE LYKES while it was moored in the Port of Beaumont, Texas, on June 26, 1964. At the time of his death, Earl M. Jones was 49 years of age.

2.

Lucille Jones married Earl M. Jones on the 8th of April, 1937, and is his surviving wife. Earl M. Jones was born April 24, 1915. Lucille Jones was born February 26, 1920. They were each married only this one time. Two children were born of this marriage but only one survived, Revordia Jones, who was born January 17, 1940. The father of Earl M. Jones predeceased him but his mother survives, Margaret Jones, the intervenor herein, and she was 66 years of age at the time of the death of Earl M. Jones. These three libellants are all and the only beneficiaries of Earl M. Jones under Article 4675 as applied to Article 4671 of Vernon's Revised Civil Statutes of the State of Texas.

Alto V. Watson, Beaumont, Tex., for libellants Lucille Jones and Revordia Jones.

**3.**

Earl M. Jones died intestate. There was no administration of his estate and none is necessary. At the time of his death, Earl M. Jones was living with and was the sole support of his wife, Lucille Jones. He made contributions in money and services to his mother, Margaret P. Jones, and his daughter, Revordia Jones, during his lifetime. In another action, A.D. No. 1103, which was consolidated with this action, Wayne Barrow Placide filed a libel against the respondents herein claiming damages because of the death of his father, Earl M. Jones, the said Wayne Barrow Placide being an illegitimate son of the said Earl M. Jones, and the Court finds that Wayne Barrow Placide is not a beneficiary of Earl M. Jones under the said survival Statutes.

**4.**

The SS JESSE LYKES is a dry cargo vessel and on the occasion in question, June 26, 1964, was being loaded with grain at the grain elevator docks in the Port of Beaumont on navigable waters of the United States. The vessel was owned and operated by the respondent, Lykes Brothers Steamship Company, Inc., on the occasion in question and had been since June 16, 1945. P. C. Pfeiffer Co., Inc. was the longshore contractor with the SS JESSE LYKES for the loading of the vessel. The Court finds that Earl M. Jones as an employee of P. C. Pfeiffer Co., Inc., was the business invitee of the vessel, was performing the traditional work of a seaman in helping to load the vessel on the occasion of his death, and was entitled to the rights the same as a seaman to be afforded a seaworthy ship and a reasonably safe place to work.

**5.**

The No. 3 cargo space in the SS JESSE LYKES was composed of three holds called the upper tween deck, the lower tween deck, and the lower hold. There were three hatches, one at the main deck level, one between the upper and lower tween decks, and one between the lower tween deck and the lower hold. There were hatch beams across each of these hatches that supported hatch boards to close the decks of the main deck, the upper tween deck, and the lower tween deck. The gang assigned to prepare for loading to load No. 3 cargo space was composed of Charles Williams, gang foreman, Johnny Cantue, Douglas Harrison, Jr., Earl Monroe and the deceased, Earl M. Jones. Two hatch beams were removed from the main deck hatch, two were removed from the upper tween deck hatch, one was removed from the lower tween deck hatch. The two walking foremen, Gaspard and Comeaux, and the gang foreman, Charles Williams, decided not to remove the beam in question and so instructed Earl Monroe and Earl M. Jones and the beam was not removed. All of the hatch beams were equipped with locks which is a piece of metal that slipped into a slot on the hatch combing and prevented the beam from being dislodged while cargo was being worked adjacent to the beam. The more the beam was pulled and pushed, the tighter the lock would fit so the beam could not be dislodged if the locks were engaged without breaking the locks. The sole purpose of the lock on each hatch beam was for it to be engaged to hold the beam in place when cargo was being worked adjacent to the beam. The beam in question became dislodged during loading operations and fell on Earl M. Jones in the lower hold killing him instantly on June 26, 1964.

**6.**

Charles Williams was the gang foreman in which Earl M. Jones was working on the occasion in question. He had personally inspected the latches or locks on the beams adjacent to where the chute was to be lowered prior to the time the chute was put into the hold, and he at that time found all of them to be frozen on all such beams so they could not be engaged including the beam in question. Earl M. Jones had himself attempted to engage the locks and found them frozen and had reported it to Charles Williams prior to the time the chute was lowered. At the time the chute

was lowered into the hold and grain loading operations begun, the beam in question was not lashed, locked or otherwise secured and it was adjacent to the chute through which cargo was being worked.

### 7.

That working cargo with the chute adjacent to the hatch beam that was not lashed, locked or otherwise secured was a violation of Section 9.43(E) of the Safety and Health Regulations for Longshoring promulgated and published by the United States Department of Labor as follows: "(E) The beam or pontoon left in place adjacent to a section to which cargo is being worked shall be lashed, locked, or otherwise secured."

### 8.

The fact that the locks on the hatch beam in question were frozen by corrosion rendered the vessel unseaworthy and constituted failure to furnish Earl M. Jones with a reasonably safe place to work and was a cause of his death.

### 9.

The insertion of the chute adjacent to a hatch beam that was not locked, lashed, or otherwise secured and the working of cargo created a dangerous condition and the failure to furnish Earl M. Jones a reasonably safe place in which to work and was negligence of the longshore contractor, P. C. Pfeiffer Co., Inc., a cause of the death of Earl M. Jones. The negligence of the impleaded respondent set out in paragraph 7 constituted a failure on the part of the impleaded respondent stevedoring company, P. C. Pfeiffer Co., Inc. to do its stevedoring work in a reasonably safe and workmanlike manner which was a cause of the death of Earl M. Jones, deceased.

### 10.

The chute in question had a lip on the end of it through which the angle of the discharge of the grain was controlled, it being substantially at right angles to the chute itself. The angle of the lip could be raised or lowered by means of a hydraulic jack at the bottom of the chute. The chute itself could be raised or lowered by means of electrical buttons on an electrical switch which is separate and apart from the hydraulic jack. When last seen, Earl M. Jones was operating the hydraulic jack to lift the lip and at no time operated the electrical switch which would raise or lower the chute. Earl Monroe was the only one who operated the electrical switch. The operation of the hydraulic jack to raise the lip would not raise or lower the chute itself, or cause it to effect the beam which was dislodged and fell upon and killed Earl M. Jones. When cargo was being loaded through the chute the chute would be caused to surge back and forth sufficiently to strike the beam in question and this was known to all hands and all foremen.

No one actually saw what dislodged the beam or saw it strike Jones. The hold was extremely dusty because grain had been loading for three or four minutes and this created such intense dust and lowered the visibility to the extent that you could not see more than a foot or two in front of you.

### 11.

Earl M. Jones and Earl Monroe were the only men in the lower hold on the occasion in question. Before the chute was lowered into the hold Earl M. Jones and Earl Monroe began preparations to tie onto the beam in question so it could be removed. Gaspard and Joe Comeaux, the walking foremen and Charles Williams, the gang foreman, held a conference and decided to leave the beam in question in place and Earl M. Jones and Earl Monroe were so instructed.

### 12.

The gang foreman did not instruct Earl M. Jones or Earl Monroe the only two people in the hold at the time of the accident or prior thereto to latch or secure the beam other than by locking devices and when Charles Williams, the gang foreman, inquired if the beam in question was locked, he was told by Earl Jones and he knew from his own prior inspection that the locks were frozen. Earl Jones knew that the locks were

frozen and would not engage. He knew that the beam was not locked, lashed or otherwise secured. He knew that the beam was left in place because he was ordered to do so by the gang foreman. Earl M. Jones did not raise the chute by use of the electrical switch. He did work underneath the hatch beam which was not locked, lashed or otherwise secured. In these things he was not negligent but he did assume the risk of this unsafe place to work, immediately prior to his death.

### 13.

Earl M. Jones was an intelligent, experienced, careful, highly competent longshoreman and had been engaged in such occupation since 1952. On other jobs, he had been the assistant gang foreman. He was considered a man of industrious, thrifty habits. At the time of his death, he had built his own home, and furnished it and no money was owed on it or the furnishings. He paid the burial policy for his mother and assisted her when she needed unusual finances, such as hospital bills and he also performed services, such as mowing the yard and doing carpenter work for his mother on occasions.

### 14.

Earl M. Jones was in good health. He was a vigorous man, and he was unusually industrious. He could have been expected to work more than his normal work expectancy. He received under the Longshoreman's contract a raise in pay each year and so it is reasonably probable that his earnings would have increased. During the last five months and 26 days of his life Earl M. Jones earned as a longshoreman, $2,861.41, but in the year of 1962 he earned as a longshoreman $5,783.74. Earl M. Jones could have easily been expected to continue working either as a longshoreman or foreman until he was 65 to 70 years of age or older. Thus, the present cash value of his reasonable expected contributions of earnings to his beneficiaries, discounted, would have been $40,000.00.

### 15.

Lucille Jones, his widow, paid the sum of $1,620.30 for the funeral services and burial of Earl M. Jones and it is stipulated said amount is reasonable and was necessary.

### 16.

In addition to the contributions that his beneficiaries had reasonable expectations of receiving from his earnings, his wife has lost the value of his attention, care and counsel, and his expected legacy. His daughter, Revordia Jones, has, in addition, lost the sum of which represented her paternal nurture, moral and mental training. The mother, Margaret Jones, has lost in addition the sum of money which would equal the contribution and personal services expected to have been rendered her by her only son. These combined losses paid now in cash equal the sum of $10,000.00 for all beneficiaries in addition to the expected contributions to his beneficiaries of his earnings.

### CONCLUSIONS OF LAW

### 1.

■ This Court has jurisdiction. Venue is in this district and division. All necessary parties, libellants and respondents, are properly before the Court. Wayne Barrow Placide is not a beneficiary of Earl M. Jones under Article 4675 as applied to Article 4671 of Vernon's Civil Statutes of the State of Texas. Lucille Jones, Revordia Jones and Margaret Jones are all and the only beneficiaries of the said Earl M. Jones under said statutes.

### 2.

■ At all times material hereto, the SS JESSE LYKES was unseaworthy and the respondents, the SS JESSE LYKES and Lykes Brothers Steamship Co., Inc. failed in their non-delegable duty to furnish a seaworthy vessel and a reasonably safe place for Earl M. Jones to work, thus causing his death, in that (a) the locks on the beam in question were frozen by corrosion and not reason-

ably fit for the purpose of which they were intended, (b) had the locks been operative they would have been engaged by the foreman, Charles Williams. Also inspecting them was Earl M. Jones, who likewise attempted to engage them and found them frozen and so reported it to Charles Williams, the gang foreman, prior to the time that the chute was lowered into the hold. The beam in question was not locked, lashed or secured in any manner. This created a dangerous situation for Earl M. Jones to work in. This constituted negligence on the part of the longshoreman contractor and a cause of the death of Earl M. Jones, and rendered the vessel unseaworthy and this was a cause of the death of Earl M. Jones.

### 3.

■ The present cash value of the monetary benefits of the libellants and intervenor had a reasonable expectation of receiving from Earl M. Jones had he lived is the sum of $40,000.00, which the libellants, Lucille Jones, Revordia Jones and intervenor Margaret P. Jones are entitled to recover in addition to the other services and duties he would ordinarily be expected to furnish the libellants and the intervenor which is the sum of $10,000.00 which should be paid to them as follows: Margaret Jones, the mother, $12,500.00, Revordia Jones, the daughter, $7,500.00; and Lucille Jones, the surviving wife, the balance. In addition, Lucille Jones is entitled to recover the reasonable value of the funeral services and interment of her husband in the amount of $1,620.30.

### 4.

■■ Earl M. Jones was not negligent but he did assume the risk of an unsafe place to work, but assumption of risk is no defense under general maritime law.

### 5.

■ The respondent, SS JESSE LYKES and Lykes Brothers Steamship Co., Inc., was guilty of conduct sufficient to preclude its recovering indemnity from the impleaded respondent, P. C. Pfeiffer Co., Inc. in an amount in excess of fifty (50%) per cent because the vessel was unseaworthy due to the locks being frozen and this was a cause of the death of Earl M. Jones. In addition, the owner-operator, master and members of the crew of the vessel were negligent in allowing the locks to become frozen which was a cause of the death of Earl M. Jones. On the other hand, the longshoreman contractor, walking foreman and gang foreman in lowering the chute into the hold of the vessel and working cargo adjacent to beams which were not locked, lashed or otherwise secured as required by Section 9.43(E) of the Safety and Health Regulations for Longshoring, created an unsafe place for Earl M. Jones to work and contributed to violating the continuing duty which a vessel has to furnish the deceased a safe place to work, thus rendering the ship unseaworthy and constituting negligence, and in each instance was a cause of the death of Earl M. Jones.

### 6.

■ Texas Employers' Insurance Company, as intervenor, is denied any right of subrogation for any amount because of payments made to or on behalf of Orvelyn Renee Jones, the granddaughter of Earl M. Jones, because she is not a beneficiary of Earl M. Jones under the said statutes but the Texas Employers' Insurance Company is awarded a judgment against the libellant, Lucille Jones, for the amount of benefits it has actually paid to Lucille Jones pursuant to the award of compensation entered by the deputy-commissioner.