245 So.2d 198 (1971)
Jane SANDERS, as Mother and Next Friend of Stanley Tillman, a Minor
v.
Isiac TILLMAN, Administrator of the Estate of D.L. Tillman, Deceased.
No. 46088.
Supreme Court of Mississippi.
February 22, 1971.
Rehearing Denied March 22, 1971.
Watkins & Kitchens, Crystal Springs, for appellant.
J. Harold Graham, Jr., Crystal Springs, for appellee.
*199 ROBERTSON, Justice.
Jane Sanders, as mother and next friend of Stanley Tillman, asserted in the Administration of the Estate of D.L. Tillman, Deceased, in the Chancery Court of Copiah County, Mississippi, that her minor son, Stanley Tillman, was the illegitimate son of D.L. Tillman, and as such was his sole heir at law and entitled to any damages recovered for his wrongful death.
The trial court found, that even though Jane Sanders was married to Edward Lee Sanders on May 11, 1957, and was still married to him on July 21, 1962, when Stanley was born, that the evidence adduced proved that Stanley Tillman was the son of D.L. Tillman. However, the court went on to hold that, being illegitimate, Stanley Tillman was not entitled to bring suit under Section 1453, Mississippi Code of 1942 Annotated, for the wrongful death of D.L. Tillman, his father.
The sole assignment of error was:
"[T]he lower Court erred in failing to recognize Stanley Tillman, illegitimate son of the decedent, as a proper claimant under the Mississippi Wrongful Death Act, Sec. 1453 of the Mississippi Code of 1942 (Recomp.), as amended, to the exclusion of decedent's mother, brothers and sisters."
Appellant Sanders asserts that Section 1453 violates the Fourteenth Amendment to the United States Constitution in that it denies equal protection of the law to her illegitimate son, Stanley Tillman. She cites, in support of her contention, the recent cases of Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), and Glona v. American Guarantee and Liability Insurance Company, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968). Both of these cases involved the Louisiana wrongful death statute, which precludes recovery by an illegitimate for the wrongful death of either parent and also the recovery by either parent for the wrongful death of an illegitimate child.
In Levy, an action was brought in a Louisiana District Court on behalf of five illegitimate children for the wrongful death of their mother. In Glona, an action was brought by a mother for the wrongful death of her illegitimate son.
The Supreme Court of the United States, in a six-three decision, held in Levy that:
"Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. These children, though illegitimate, were dependent on her; she cared for them and nurtured them; they were indeed hers in the biological and in the spiritual sense; in her death they suffered wrong in the sense that any dependent would.

*200 "We conclude that it is invidious to discriminate against them when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother." (Emphasis added) 391 U.S. at 72, 88 S.Ct. at 1511, 20 L.Ed.2d at 439-440.
Justice Harlan, joined by Justices Black and Stewart, reasoned in his dissent:
"The rights at issue here stem from the existence of a family relationship, and the State has decided only that it will not recognize the family relationship unless the formalities of marriage, or of the acknowledgment of children by the parent in question, have been complied with.
"There is obvious justification for this decision. If it be conceded, as I assume it is, that the State has power to provide that people who choose to live together should go through the formalities of marriage and, in default, that people who bear children should acknowledge them, it is logical to enforce these requirements by declaring that the general class of rights that are dependent upon family relationships shall be accorded only when the formalities as well as the biology of those relationships are present." 391 U.S. at 80, 88 S.Ct. at 1514, 20 L.Ed.2d at 446.
At the threshold we observe that neither the Levy case nor the Glona case would have arisen in Mississippi, because Mississippi's wrongful death statute, Section 1453, since 1904 has provided:
"The provisions of this section shall apply to illegitimate children on account of the death of the mother and to the mother on account of the death of an illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates." (Emphasis added).
We think Section 1453 is clearly based on a reasonable, realistic and logical classification of claimants. It is a simple matter to prove the maternity of an illegitimate child, but it is infinitely more complex and difficult to prove the paternity. It is only necessary for the father to be present at the laying of the keel, not at the launching of the ship. The mother must be present at both, and it is not at all difficult to prove who launched the ship.
In Mississippi the requirements are simple and easy for a father to legitimatize his child under the law. Sections 474, 1269-01, Mississippi Code of 1942 Annotated (1956). In 1962, Mississippi enacted the "Uniform Act on Paternity." (§§ 383-01 through 383-27). If the father and mother had seen fit to follow it, this suit would never have arisen. For instance, Section 383-01 provides:
"A child born out of lawful matrimony also includes a child born to a married woman by a man other than her lawful husband."
That definition exactly fits this case. Section 383-02 outlines the simple procedure to be followed:
"Paternity may be determined upon the petition of the mother, the child, or any public authority chargeable by law with the support of the child. If paternity has been lawfully determined, or has been acknowledged in writing according to the laws of this state, the liabilities of the father may be enforced in the same or other proceedings by the mother, the child, or any public authority which has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, necessary support and maintenance, and medical or funeral expenses for the mother or the child. However, proceedings hereunder shall not be instituted by the mother after the child has reached the age of one year, unless the defendant be absent from the state so that personal service of process cannot be had upon him, or, unless the defendant has acknowledged in writing that he is the father of the child."
*201 Section 383-12(e) elaborates on the power of the court:
"The court, on the date of the entering of such order of paternity, if the father of the child is unmarried and could lawfully have consummated a marriage with the mother of the child under the laws of this state, may adjudicate in such order that the child shall inherit from the father as could a natural child of the father under the statutes of descent and distribution; provided, however, that the entry of such order shall not abridge the right of the father to devise and bequeath his estate by last will and testament, as now provided by law, nor shall the mother or her heirs inherit any part of the estate of the father through said child, unless the mother and father of the child shall subsequently effect a valid marriage to each other. In the event of the death of such child, unmarried and without issue, the remaining estate, if any, in such child inherited from the father shall be vested in the legal heirs of the father."
The father could have adopted his illegitimate child. Even there the legal requirements are simple and clear. Sections 1269-02 through 1269-13.
D.L. Tillman in his lifetime did not see fit to formally acknowledge, legitimate or adopt Stanley Tillman in any of the many simple ways outlined in our law. We cannot do this for him after his death.
The chancellor was correct in his construction of Section 1453, Mississippi's wrongful death statute. An illegitimate son cannot sue for or recover damages for the wrongful death of his father, where that father has not acknowledged him in any way recognized by our law.
The judgment of the chancery court is affirmed.
Affirmed.
ETHRIDGE, C.J., and PATTERSON, INZER and SMITH, JJ., concur.