Maria GARZA, Mother and Next Friend
of Celia Garza and on Behalf of Miguel
Angel De La Rosa, Jr., Petitioner,

v.

MAVERICK MARKET, INC.,
Respondent.

No. C-7275.

Supreme Court of Texas.

March 8, 1989.

Rehearing Denied May 17, 1989.

Thomas O. Matlock, Jr., McAllen, Ramon Garcia, Law Offices of Ramon Garcia, P.C., Edinburg, for petitioner.

Ben A. Connell and Gene F. Creely, III, Meredith, Donnell & Abernethy, Houston, for respondent.

## OPINION

RAY, Justice.

This is a suit for wrongful death brought on behalf of a child born after the death of his alleged father. The issue presented by this appeal is whether such a posthumously-born and unrecognized illegitimate child may sue for the wrongful death of his father under the Texas Wrongful Death Act. Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001–.011 (Vernon 1986). The trial court directed a verdict for the defendant, Maverick Market, and the court of appeals affirmed the trial court's judgment. 744 S.W.2d 286. We reverse the judgment of the court of appeals and remand the cause to the trial court for a new trial.

On April 18, 1984, eighteen-year-old Jesus Escobar purchased four six-packs of beer from a convenience store owned and operated by Maverick Market, Inc. in Edinburg, Texas. Jesus and seventeen-year-old Miguel Angel de la Rosa then drove around in Jesus' pickup truck and drank beer until they were legally intoxicated. Later that day, the two boys were involved in a head-on collision with another automobile and Miguel was killed. The occupants of the other automobile involved in the collision sued Maverick Market, alleging that their damages were caused by Maverick's negligence in selling beer to Jesus.

At the time of Miguel's death, his thirteen-year-old girlfriend, Celia Garza, was pregnant. The child, Miguel Angel de la Rosa, Jr., was born on October 25, 1984, approximately six months after the death of Miguel, Sr. Maria Garza, Celia's mother, intervened in the lawsuit as a plaintiff on behalf of Celia and Celia's child, Miguel, Jr. These parties are the only remaining plaintiffs as all other plaintiffs have settled with Maverick.

At trial, Celia testified that Miguel, Jr. was the son of Miguel, Sr. She testified that she dated Miguel for approximately two years, had a sexual relationship with Miguel, and that she had never had sexual relations with anyone else. Before Miguel's death, Celia conveyed to Miguel her suspicions that she might be pregnant. However, since those suspicions were never confirmed until after Miguel's death, Miguel did not know that he had fathered a child.

Leonila de la Rosa is Miguel, Sr.'s mother. She testified that Miguel, Jr. is her grandson. She also stated that she maintains an on-going relationship with Miguel, Jr., who, along with Celia, habitually spends every weekend with her.

With the assistance and testimony of Leonila de la Rosa, the Garzas sought and obtained a decree of legitimation in the 332nd District Court of Hidalgo County. When the Garzas attempted to introduce the decree at trial, the trial court excluded it from evidence ruling that it was irrelevant.

After Garza rested her case, the trial court directed a verdict in favor of Maverick Market, based on three premises:

(1) Miguel, Jr. was not entitled to recover because he was not "recognized" as the son of the decedent, Miguel, Sr.;

(2) there was no evidence that any employee of Maverick committed any negligent act which contributed to the death of Miguel, Sr.;

(3) there was no evidence that any vice principal of Maverick committed any act which would subject Maverick to liability for punitive damages.

The basis for the trial court's directed verdict on premises two and three was that no cause of action based on "dramshop" liability was recognized in Texas. As the court of appeals correctly pointed out, since the time that the trial court granted a directed verdict, this court has recognized "dramshop" liability in *El Chico Corp. v. Poole,* 732 S.W.2d 306 (Tex.1987).[1] The court of appeals correctly concluded that granting a directed verdict on the second and third premises was improper. The parties agree that the only remaining disputed issue for this court to determine is whether unrecognized illegitimate children have standing to sue for the wrongful death of their alleged fathers.

The equal protection clause of the fourteenth amendment to the United States Constitution prohibits a state from absolutely barring illegitimate children from recovery for wrongful death allowed legitimate children. The equal protection guaranty does not, however, prohibit a state from imposing upon an illegitimate child a greater burden of proof to establish his right to recover for the wrongful death of his father, as long as that burden is reasonably related to the state's interest in avoiding fraudulent claims of paternity.

*Edwards Transfer Co., Inc. v. Brown,* 740 S.W.2d 47 (Tex.App.—Dallas 1987), citing *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Gonzalez v. Texas Employers Ins. Ass'n,* 509 S.W.2d 423, (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.); *Parham v. Hughes,* 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979); *aff'd Brown v. Edwards Transfer Co.,* 764 S.W.2d 220 (Tex.1988).

The court of appeals held that in order to have standing to sue under the Wrongful Death Act, an illegitimate child must comply with the requirements of the Family Code and Probate Code, specifically, Tex. Fam.Code Ann. § 13.01 et seq. (Vernon Supp.1987) and Tex.Prob.Code Ann. § 42(b) (Vernon Supp.1987). 744 S.W.2d at 288–89. However, this court, in *Brown v. Edwards Transfer Co.,* 764 S.W.2d 220 (Tex.1988), rejected engrafting onto the Wrongful Death Act the requirements of the Probate Code for an illegitimate child to inherit from his father. The court reasoned that while the Probate Code provided an in-depth system for disposition of property incident to estates, it did not by that statute intend to provide an appropriate means to identify classes of persons entitled to sue under the Wrongful Death Act.

Similarly, in our present case it is inappropriate to incorporate the requirements of legitimation under the Family Code into the Wrongful Death Act. The two bodies of law are simply too disparate in application for such combination. The obvious purpose of chapter 13 of the Family Code is to protect the rights of mothers and putative fathers, and to serve the best interest of the child. The text of that chapter shows that it was neither designed or even intended to address tort actions; nor was it designed to protect tortfeasors. The equally obvious purpose of the Wrongful Death Act, on the other hand, is to provide a means whereby surviving spouses, children, and parents can recover for the loss of a family member by wrongful death. Absent any indication by the legislature that it intended the legitimation provisions of the Family Code to apply to the Wrongful Death Act, we will not make that application ourselves.

We hold that in a wrongful death action an illegitimate child need not be "recognized" in accordance with other bodies of law not specifically applicable to the Wrongful Death Act. If paternity is questioned in a wrongful death action the alleged child would have to prove by clear and convincing evidence that he is a filial

---

1. For causes of action accruing on or after June 11, 1987, the civil remedy for one injured by an alcoholic beverage licensee's intoxicated patron is governed by statute. Tex.Alco.Bev.Code Ann. §§ 2.02, 2.03 (Vernon Supp.1989).

descendant of the deceased. *Brown*, 764 S.W.2d 220. As to what evidence is clear and convincing, a fact finder must decide that question in each case. Blood tests, if available, may help show the alleged father's paternity. Tex.Fam.Code Ann. § 13.06 (Vernon Supp.1989). Evidence of physical resemblance of the child to the alleged father, either by photographs of the child and father, or by the offer of the child itself, is also admissible to determine paternity. *In re B M N*, 570 S.W.2d 493 (Tex.Civ.App.—Texarkana 1978, no writ); *Napier v. Napier*, 555 S.W.2d 186 (Tex.Civ. App.—El Paso 1977, no writ). In addition, prior statements by the alleged father that he was the father of the child, or other admissions by him bearing on his relationship to the child may be considered. *D. W. L. v. M.J.B.C.*, 601 S.W.2d 475 (Tex.Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Napier v. Napier*, 555 S.W.2d 186. A trial court can also consider evidence of periods of conception and gestation. *In re M.G.*, 625 S.W.2d 747 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.), *cert. denied*, 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1331 (1982). Whether some or all of this evidence would rise to the level of clear and convincing evidence in a particular case cannot be predicted. If, however, at least some evidence of paternity is offered in a suit under the Wrongful Death Act, an illegitimate child is entitled to a chance to argue to the trier of fact that he is the child of the alleged father.

 Accordingly, in this case, we must determine whether the trial court properly directed a verdict because there was no evidence that Miguel, Jr. was Miguel's child. In doing so, we "consider all of the evidence in the light most favorable to the plaintiff, disregarding all contrary evidence and inferences." *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 865 (Tex.1982). It is error to instruct a verdict when the evidence raises any issue of material fact. *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex.1977). On this record, there was some evidence that Miguel, Jr. was the child of Miguel Angel de la Rosa. Celia Garza testified that Miguel, Jr. was Miguel, Sr.'s son, and that she had never

engaged in sexual relations with anyone other than Miguel, Sr. Miguel, Sr.'s own mother, Leonila de la Rosa, testified that Miguel, Jr. is her grandson, and that she has maintained a continuing relationship with him. At the time of Miguel, Jr.'s birth, Celia Garza named Miguel as the father. Photographs were introduced into evidence to prove physical resemblance.

Inasmuch as there was some evidence that Miguel, Jr. was the deceased's son, the trial court erred in directing a verdict for Maverick. The question of whether the evidence clearly and convincingly proved that Miguel, Jr. was the son of Miguel Angel de la Rosa was a question for the jury to determine. Accordingly, we reverse the judgment of the court of appeals and remand the cause for a new trial consistent with this opinion.

SPEARS, J., files a dissenting opinion in which COOK, J., joins.

SPEARS, Justice, dissenting.

I respectfully dissent.

The majority holds that an illegitimate child has standing to sue for the wrongful death of his putative father even though paternity was never formally established pursuant to statutory requirements. This holding will encourage the filing of spurious claims and inject intolerable uncertainty into wrongful death claims. It is also contrary to the legislative intent of the Wrongful Death Act. I would require that an illegitimate child must be statutorily recognized pursuant to the Family Code before the child has standing to bring a wrongful death action.

At common law no cause of action existed for wrongful death. *Duhart v. State*, 610 S.W.2d 740, 742 n. 2 (Tex.1980). Thus, an action for wrongful death in Texas is a purely statutory remedy, authorized by the Wrongful Death Act which provides recovery solely for "the surviving spouse, children, and parents of the deceased." Tex. Civ.Prac. & Rem.Code Ann. § 71.004 (Vernon 1986). Until today, any statute creating liability non-existent at common law has been "strictly construed in the sense

that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Dutcher v. Owens,* 647 S.W.2d 948, 951 (Tex.1983). Because the term "children" is not defined by the Act, it should be construed in accordance with the intent of the legislature, using its common ordinary meaning. *See Brown v. Edwards Transfer Co., Inc.,* 764 S.W.2d 220, 226 (Spears, J., concurring and dissenting). Today, the court has effectively expanded the definition of the term "children" beyond what the legislature could have envisioned. The majority's broad interpretation is but a circular definition that ignores the common understanding of the term.

The Wrongful Death Statute itself indicates a restrictive intent in who should be allowed recovery by providing the remedy is "for the *exclusive* benefit" of the deceased's spouse, children and parents. Tex.Civ.Prac. & Rem.Code Ann. § 71.004(a) (emphasis added). In other statutes, the legislature has also evidenced an intention that the term "children" be narrowly construed. For example, in the Probate Code the term " 'child' includes an adopted child, ... but, unless expressly so stated ... does not include an unrecognized, illegitimate child of the father." Tex.Prob.Code Ann. § 3(b) (Vernon 1980). In 1987 the legislature amended the Probate Code to allow unrecognized, illegitimate children an action to inherit from their alleged father provided they can prove they are the deceased's children by clear and convincing evidence. Tex.Prob.Code Ann. § 42(b) (Vernon Supp.1989). This amendment only allows the illegitimate child to recover "for purposes of inheritance" upon "clear and convincing" evidence. Had the legislature desired to introduce the clear and convincing evidence test to the Wrongful Death Act, it could have done so but it did not. Because an action for wrongful death is purely a creature of statute, it is improper for this court in this case to legislate a new definition of the term "child" and engraft it on this remedy. Today's ruling will spawn a plethora of lawsuits in every action brought under the Wrongful Death Act.

The other statutory definition of "child" provided by the legislature appears in the Family Code. The Family Code provides that a child is the legitimate child of his father (1) if the child is born or conceived before or during the marriage or attempted marriage of his parents, or (2) if the father's paternity is established under chapter 13 of the Family Code. Tex.Fam.Code Ann. § 12.02 (Vernon 1986 & Supp.1989). Chapter 13 provides that paternity may be established through either an involuntary paternity suit or a voluntary legitimation proceeding. *Id.* §§ 13.01–.44. Requiring paternity to be formally established under the procedures provided in the Family Code would ensure the orderly resolution of wrongful death claims and protect against fraudulent allegations of paternity. The statutory method is rational, reasonable and fair. By expressly providing procedures for legitimation, the legislature meant to exclude others—*Expressio unius est exclusio alterius.*

Conversely, Garza contends, and the majority holds, that the test for recognition of a child under the Family Code has no application to a wrongful death action. She urges that this court hold an illegitimate child, suing for the wrongful death of his or her putative father, is not required to be statutorily legitimated and that any such requirement would violate the equal protection clause of the fourteenth amendment to the United States Constitution.

The argument that illegitimate children could *per se* be excluded from wrongful death recovery was rejected by the United States Supreme Court in *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). To absolutely deny a child any right to seek recovery for a parent's wrongful death merely because the child is illegitimate would violate the equal protection clause of the fourteenth amendment. *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Although a statute may not completely bar an illegitimate child from recovery, the state is nevertheless permit-

ted to create statutory classifications that are substantially related to important governmental objectives. *Clark v. Jeter,* — U.S. ——, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Thus, the state may impose different or additional requirements upon illegitimate children as long as the scheme withstands intermediate scrutiny. *Id.; Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).

The United States Supreme Court has held that certain statutory distinctions based on illegitimacy have substantial justification. In *Lalli v. Lalli,* 439 U.S. at 275, 99 S.Ct. at 528, 58 L.Ed.2d at 516, the Court upheld a New York statute that permitted an illegitimate child to inherit from his intestate putative father only if the child obtained a formal acknowledgment or adjudication of paternity during the father's lifetime. In so holding, the Court recognized that states have a legitimate interest in dealing with "the often difficult problem of proving the paternity of illegitimate children and the related danger of spurious claims against intestate estates." *Id.* at 265, 99 S.Ct. at 523, 58 L.Ed.2d at 509; *accord Trimble v. Gordon,* 430 U.S. 762, 770–71, 97 S.Ct. 1459, 1465–66, 52 L.Ed.2d 31, 39–40 (1977).

In *Parham v. Hughes,* 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979), the Court applied the same rationale to a wrongful death case in which a father attempted to sue for the wrongful death of an unrecognized illegitimate child. The Court stated:

This same state interest in avoiding fraudulent claims of paternity in order to maintain a fair and orderly system of decedent's property disposition is also present in the context of actions for wrongful death. If paternity has not been established before the commencement of a wrongful-death action, a defendant may be faced with the possibility of multiple lawsuits by individuals all claiming to be the father of the deceased child. Such uncertainty would make it difficult if not impossible for a defendant to settle a wrongful-death action in many cases, since there would always exist the risk of a subsequent suit by another person claiming to be the father. The State of Georgia has chosen to deal with this problem by allowing only fathers who have established their paternity by legitimating their children to sue for wrongful death, and we cannot say that this solution is an irrational one.

*Id.* at 357–58, 99 S.Ct. at 1749, 60 L.Ed.2d at 278–79.

Similar concerns are present when an illegitimate child is permitted to sue for the wrongful death of his or her putative father. The lurking possibility that a previously unknown alleged son or daughter could come forward at some future date would frustrate the efficient resolution of wrongful death claims. The statutory methods of proof provided in the Family Code avoid the extended uncertainty which would otherwise burden wrongful death actions.

It is said that the accusation of paternity is "easy to make but difficult to defend against." *Estate of Blumreich v. Kaquatosh,* 84 Wis.2d 545, 267 N.W.2d 870, 877 (1978); *accord Lalli,* 439 U.S. at 267–74, 99 S.Ct. at 524–27, 58 L.Ed.2d at 510–15. This realization becomes even more apparent with respect to the deceased putative father of a posthumously-born illegitimate child. Because the child is born after the putative father's death, the father never has an opportunity to admit or deny paternity. The deceased putative father is unavailable to assert defenses or to assist in the cross examination of his accusers. Blood samples, which might otherwise conclusively eliminate him as the father, may not be available. The putative father's death undermines the reliability of the fact-finding process. The fact-finders in these cases will have only gut feelings, interested witnesses, and their own sympathies and emotions to guide them. Thus, the state's interest in preventing spurious claims, resolving problems of proof, and preventing fraud are even more acute with respect to posthumous children. To allow unrecognized, illegitimate children to sue for the wrongful death of deceased putative fathers "would open wide the door to posthumous claims of paternity impossible of defense." *Bernacki v. Superior Con-*

*struction Co.,* 270 Ind. 667, 388 N.E.2d 536, 539 (1979). It will allow wrongful death claims to embarrass the family and friends and to diminish the community standing of the deceased. Claims may be leveled which cannot be directly controverted. Moreover, family harmony will be disrupted, harmony which this court should seek to preserve, even if it bars financial gain to a putative child.

The reasonable and proper interpretation of the term "children" as contained in the Wrongful Death Act should only include illegitimate children whose paternity has been established pursuant to the statutory provisions contained in the Family Code. *See, e.g., S.M.V. v. Littlepage,* 443 N.E.2d 103 (Ind.App.1982) (term "dependent children" in wrongful death statute limited to include posthumously-born illegitimate child who has satisfied statutory requirements for maintaining a claim for inheritance against father's estate or who has established paternity under paternity statute); *Sanders v. Tillman,* 245 So.2d 198 (Miss.1971) (illegitimate child cannot sue for wrongful death of putative father unless father statutorily acknowledged child); *Estate of Blumreich v. Kaquatosh,* 84 Wis.2d 545, 267 N.W.2d 870 (1978) (posthumously-born illegitimate child may recover for wrongful death of putative father only if paternity established pursuant to heirship statute or if there was legitimation by marriage). *See also Jones v. S.S. Jesse Lykes,* 253 F.Supp. 368, 372 (E.D.Tex.1966) (unrecognized illegitimate child of decedent is not a beneficiary of decedent under Texas survival statute); *Whitefield v. Kainer,* 369 So.2d 684, 685 (Fla.Dist.Ct.App.1979) (posthumously-born and unrecognized illegitimate child is not a "survivor" entitled to sue for putative father's wrongful death).

The court's holding will lead to bizarre and anomalous results. An illegitimate child could bring suit under the Wrongful Death Act and be found to be a "child" for purposes of recovery. The same illegitimate child could then seek a share of the deceased's estate under the Probate Code and be denied any portion of the estate because he could not prove he was the deceased's "child."

Similar situations might arise if the illegitimate child is found to be a "child" for a wrongful death recovery, but is found *not* to be a "child" of the alleged father in a paternity proceeding. It is ludicrous to suggest the legislature intended such an incongruous result.

Garza contends that she complied with the statutory requirements of the Family Code when she obtained the decree of legitimation from the 332nd District Court. Garza obtained the decree on January 27, 1986, approximately two years after the death of Miguel, Sr. The decree recites that only Celia Garza and the decedent's mother appeared in the legitimation proceeding and that the decedent's mother executed the statement of paternity identifying the decedent as the father of Miguel, Jr. No other evidence or statements are mentioned in the decree. The trial court excluded the decree from evidence because the decree did not comply with the statutory requirements set forth in section 13.21 of the Family Code.

A judgment of a court of competent jurisdiction is generally presumed valid, *Freeman v. Freeman,* 160 Tex. 148, 327 S.W.2d 428 (1959); however, a judgment is void when it is apparent that the court rendering judgment had no jurisdiction of the subject matter, no jurisdiction of the parties, no jurisdiction to enter the judgment, or no capacity to act as a court. *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987).

Section 13.21 of the Texas Family Code provides a voluntary legitimation procedure whereby a party may petition the court and obtain a court decree designating the father as a parent of the child. To initiate the proceeding, the father of the child must execute a "statement of paternity" in accordance with section 13.22 of the Code. In the instant case, however, the issuing court failed to comply with the statutory requirements. The decree was based on a statement of paternity executed by the putative father's mother. Such a statement does not support a voluntary legitimation decree under section 13.21. *See In re K,* 520 S.W.2d 424, 426–27 (Tex.Civ.App.—Cor-

pus Christi 1975) (requiring strict compliance with statutory provisions for voluntary legitimation under sections 13.21 and 13.22), *aff'd,* 535 S.W.2d 168 (Tex.), *cert. denied,* 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed. 2d 189 (1976). In this case, the court's opinion fails to explain how it ignores this requirement. Further, an alleged father is entitled to service of citation upon the commencement of any proceeding affecting the parent-child relationship. Tex.Fam.Code Ann. § 11.09(a)(8) (Vernon Supp.1989); *In re K,* 535 S.W.2d 168, 169 (Tex.), *cert. denied,* 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed. 2d 189 (1976). At a minimum, the putative father's personal representative should be made a party to the legitimation proceeding. *See Stanley v. Illinois,* 405 U.S. 645, 657–58, 92 S.Ct. 1208, 1216, 31 L.Ed.2d 551, 562–63 (1972) (failure to give unwed father timely notice of hearing affecting parent-child relationship violated due process); *Voss v. Duerscherl,* 425 N.W.2d 828, 831 (Minn.1988) (after putative father's death, paternity action may only be maintained against personal representative of estate). The record does not reflect that the personal representative of Miguel Sr. was ever properly served or joined as a party to the proceeding. Thus, the *ex parte* legitimation decree is void, and the trial court did not err in excluding the decree from evidence.

Unfortunately, this case involves very emotional facts, but the precedent set today will be used in future cases which do not generate as much sympathy. We should not be controlled by our sympathies or sensitivities to the plight of the young mother and child involved in this case. The decision made today extends far beyond this touching scenario, as will soon be apparent.

Because there is no evidence that the paternity of Miguel Sr. was properly established pursuant to the provisions in the Family Code, Miguel Jr. does not have standing to sue for the wrongful death of his putative father under the Wrongful Death Act. The trial court properly rendered a directed verdict in favor of Maverick Market, Inc. Accordingly, I dissent from the holding of the court this day and would affirm the judgment of the court of appeals.

COOK, J., joins in this dissenting opinion.