**Opinion issued May 1, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00230-CV

———————————

## IN RE THE DALLAS GROUP OF AMERICA, INC. AND ACTION PERSONNEL, INC., Relators

---

Original Proceeding on Petition for Writ of Mandamus

---

*and*

———————————

## NO. 01-14-00282-CV

———————————

## IN RE A-B-C PACKAGING MACHINE CORPORATION, Relator

---

Original Proceeding on Petition for Writ of Mandamus

---

**OPINION**

Virgel James Stoker was killed in a workplace accident. The Dallas Group of America, Inc., Action Personnel, Inc., and A-B-C Packaging Machine Corporation, the relators, are defendants in a wrongful death suit arising from the accident. The relators seek mandamus relief from the trial court's order denying their requests for genetic testing. The requested genetic tests involve two minor children, whose mothers have asserted wrongful death claims on their behalf, as beneficiaries of Stoker's estate.[1] At the time of his death, Stoker had acknowledged paternity of these two children, and the family courts had affixed his obligation to support them through court orders. Because the family courts had adjudicated Stoker's paternity and support obligations before his death, and those court orders remain unchallenged by anyone in a position to challenge them, we conclude that the trial court properly denied the relators' genetic testing requests. Accordingly, we deny the requested mandamus relief.

---

[1] The underlying case for both proceedings is *Fredreka Denise Hayes, as Next Friend of K.D.S., a minor; Brittney Harmanson, as Next Friend of A.S., a minor; and Dennis Sheehan as the Personal Representative of the Estate of Virgel James Stoker v. The Dallas Group of America, Inc., Action Personnel, Inc., and A-B-C Packaging Machine Corp.*, cause number PR0073327-A, pending in the Probate Court of Galveston County, Texas, the Honorable Kimberly Sullivan presiding. After this Court heard argument, relators Dallas Group and Action personnel announced a settlement in the trial court, but that agreement has not been finalized, and the parties have not moved to dismiss this appellate cause. The claim against A-B-C remains pending; given that this claim remains, we proceed with issuance of our opinion. *See* TEX. R. APP. P. 42.1(a).

2

## Background

A.S., a girl, was born in July 2010 to Brittney Harmanson. Harmanson and Stoker signed an "Acknowledgment of Paternity," in which they confirmed under penalty of perjury that: (1) Stoker was the biological father of A.S.; (2) each parent had been given written and oral notice of the legal benefits and consequences of paternity; (3) no other man had filed an acknowledgment of paternity regarding A.S.; (4) no court had named another man as father of A.S.; (5) Stoker had not been genetically tested to determine if he was the father; and (6) Harmanson was not married to anyone else either at the time of A.S.'s birth or within the preceding 300 days.

In October 2010, a trial court entered an agreed child support review order. In the agreed order, the trial court established Stoker's child support obligations and his rights of access to A.S. The district court found that "[t]he parent-child relationship was established between [Stoker] and [A.S.] when a properly executed Acknowledgment of Paternity was filed with the Vital Statistics Unit pursuant to Texas Family Code, Chapter 160."

In October 2011, K.D.S., a boy, was born to Fredreka Hayes. In December 2011, Stoker and Hayes signed an "Admission of Paternity and Waiver of Genetic Testing," declaring under penalty of perjury that: (1) Stoker was the biological father of K.D.S.; (2) each was given the opportunity to have a genetic test

performed to determine whether Stoker was the father of K.D.S.; and (3) each had voluntarily and knowingly declined such a test. Based on this evidence, a trial court entered a child support review order, establishing Stoker's child support obligations and rights of access to K.D.S.

While these orders were in place, relatives recount that Stoker expressed doubt about whether he was truly the biological father of A.S. and K.D.S. For example, he wrote in December 2010 to his half-sister, Latoya Howard, "I decided [in October 2010] that if I thought [A.S.] was mine I should get the DNA test to be sure and then I should try to get custody of her." He also wrote to Howard on January 21, 2012,

> I'm going to save my money and get DNA tests done on both of those kids. If they're mine, I can't do nothing but charge it to the game. If they are not then I can get away from all this bickering. . . . But them people wanna lock [me] up if I don't sign those papers are [sic] pay $700 dollars [sic] for DNA.

In addition, Howard averred that Stoker expressed doubt about his biological relationship to the children on other occasions. According to Howard, Stoker had claimed to her that the Texas Attorney General's office had pressured him to sign the acknowledgments of paternity.

According to Stoker's cousin Bobbie Sanford, Stoker "knew that [A.S.] was not his child," A.S. did not resemble Stoker, and Stoker did not have enough money to pay for the genetic testing of A.S. Another cousin, Kizzie Mason,

4

testified that Stoker believed that Harmanson had been intimate with other men during the time that she had become pregnant with A.S. Janice Stoker, Stoker's mother, also testified that A.S. did not resemble Stoker; she, too, averred that Stoker was uncertain as to his paternity and was pressured into acknowledging it.

In February 2012, Stoker, then 26 years old, was employed by Action and performing work for Dallas Group. On February 11, Stoker was found dead, pinned by equipment at Dallas Group's Texas City facility.

*Course of proceedings*

Stoker's death led to proceedings in four different courts: district, probate, and family courts in Galveston County, and family court in Harris County. This petition for a writ of mandamus arises out of the Galveston County probate court's order, but the procedural histories of the four cases intertwine.

First, Hayes, as next friend of K.D.S., brought suit in district court in Galveston County against Dallas Group and Action, alleging negligence, gross negligence, and products liability, and seeking injunctive relief to protect the scene of Stoker's death and allow Hayes to inspect it.

Second, the Galveston County probate court, which was overseeing the administration of Stoker's estate, appointed Janice Stoker as estate administrator. Janice, as administrator, swore to and filed an "Application to Determine Heirship," in which she identified A.S. and K.D.S. as "two children born to or

5

adopted by" Stoker. The probate court later removed Janice as administrator and appointed Dennis Sheehan as the personal representative of the estate. Sheehan also filed an application to determine heirship, upon which the probate court entered judgment declaring A.S. and K.D.S. to be Stoker's children.

The original action, the Galveston County district court suit, has since been transferred to the probate court and consolidated with proceedings there as a severed case. Harmanson, as next friend of A.S., joined the suit as a plaintiff, as did Sheehan, as personal representative of Stoker's estate. Stoker's parents, Virgil Smith and Janice Stoker, intervened as plaintiffs. The wrongful death plaintiffs named A-B-C as an additional defendant, contending that A-B-C manufactured equipment that caused Stoker's death.

Third, before the probate court removed Janice Stoker as the administrator of Stoker's estate, she initiated a proceeding in Galveston County family court, in which she requested genetic testing of A.S. and sought to terminate the parent-child relationship between Stoker and A.S. The family court held a hearing on Janice's motion and on a motion to dismiss the proceeding, but took both motions under advisement. Although the record before us is unclear on the exact resolution of that proceeding, it apparently was dismissed after Janice's removal as administrator, and the family court thus did not decide the motion to compel testing on its merit.

Fourth, while still in her role as administrator, Janice also filed a proceeding in family court in Harris County, in which she requested genetic testing of K.D.S. and sought to terminate the parent-child relationship between Stoker and K.D.S. That proceeding was nonsuited after Janice was removed as administrator of Stoker's estate.

Meanwhile, the probate court in Galveston appointed an attorney ad litem to represent Stoker's known and unknown heirs. The attorney ad litem moved to compel genetic testing of both A.S. and K.D.S. The probate court abated the attorney ad litem's motion pending the outcome of Janice's motions to compel testing. The record before us does not indicate whether the probate court ever resolved the attorney ad litem's motion, but during an heirship hearing, the probate court stated:

> The DNA issue has all been resolved. It was resolved because the 306[th] District Court was the court for one of the children. And that Court said: no, you don't have a right to come back for DNA [testing] because it's been more than the time elapsed. The law that they were citing was a new law that gave a father the right to go back, not a father's parent or an administrator of a father's estate.

The "new law," to which the probate court referred, is section 161.005 of the Texas Family Code. TEX. FAM. CODE ANN. § 161.005 (West 2014). As amended, that section allows a man who has acknowledged paternity without benefit of genetic testing to seek testing and to terminate his parent-child relationship if the testing excludes the man as the father. *Id.*; Act of Apr. 14, 2011, 82nd Leg., R.S., ch. 54,

7

§ 2, sec. 161.005, 2011 Tex. Gen. Laws 86, 87–88 (current version at TEX. FAM. CODE ANN. §§ 161.005(c)–(o)) (creating procedure for such challenges).

Stoker had never initiated any proceeding seeking genetic testing, but the relators seek it in discovery in this case, arguing that it is relevant based on evidence that Stoker had doubts that he was the biological father of the children. Hayes and Harmanson opposed the request. After a hearing, the probate court denied the relators' requests for genetic testing.

*Standard of review*

Mandamus relief is available when a trial court has committed an abuse of its discretion for which there is no adequate remedy by appeal. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the particular facts, even when the law is unsettled. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). In particular, mandamus relief is available when a trial court's discovery order prevents discovery that goes to the heart of litigation. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex. 1998).

**Discussion**

The relators move to compel genetic testing pursuant to Texas Rule of Civil Procedure 204.1, which permits a party to move for an order compelling another

party to "submit to a physical . . . examination by a qualified physician." TEX. R. CIV. P. 204.1(a); *see also* TEX. R. CIV. P. 192.1(g) (listing "motions for mental or physical examinations" among permissible forms of discovery). A trial court may order a physical examination "only for good cause shown and only . . . when the . . . physical condition (including the blood group) of a party, or of a person in the custody, conservatorship or under the legal control of a party, is in controversy." TEX. R. CIV. P. 204.1(c). The relators contend that genetic testing is relevant to their challenge to the children's standing to bring wrongful death claims because, unless Stoker is their biological father, the children are not wrongful death beneficiaries.

*Standing under the Wrongful Death Act*

The common law did not recognize a cause of action for wrongful death. *Bala v. Maxwell*, 909 S.W.2d 889, 893 (Tex. 1995); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 356 (Tex. 1990). In Texas, however, the Legislature has authorized claims for wrongful death by statute. The Texas Wrongful Death Act provides that "[t]he surviving spouse, children, and parents of the deceased" may sue for redress for the wrongful death of another. TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(b) (West 2014); *see generally id.* §§ 71.001–.011. These enumerated relatives and, in certain circumstances, the deceased individual's executor or administrator are the sole parties with standing to bring a Wrongful

9

Death Act claim. *Id.* §§ 71.004(b)–(c); *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275 (Tex. 1995) ("Under the wrongful death statute . . . only biological or legally-adopted children of the decedent have standing."); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 222 (Tex. 1988). The Supreme Court of Texas has held that "'children,' in the Wrongful Death Act, means filial descendants," and includes a decedent's biological and adopted children. *Brown*, 764 S.W.2d at 223; *see also Transp. Ins. Co.*, 898 S.W.2d at 275 (acknowledging standing of legally-adopted children); *Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273, 275 (Tex. 1989). The question presented by the relators is whether it includes legally acknowledged children under the modern Family Code, or whether that acknowledgment is merely evidence of paternity and is subject to collateral attack in a wrongful death suit with the results of genetic testing.

*Paternity defined by statute*

A man is presumed to be the father of a child when he is married to the child's mother and the child is born during the marriage or, under certain circumstances, after the marriage has ended. TEX. FAM. CODE ANN. § 160.204(a). Further, a man may voluntarily acknowledge his paternity of a child in a writing that complies with the Family Code. TEX. FAM. CODE ANN. § 160.302(a). With exceptions not relevant here, "a valid acknowledgment of paternity filed with the bureau of vital statistics is the equivalent of an adjudication of the paternity of a

child." *Id.* §§ 160.305(a), 160.302(a)(5) (parents must acknowledge this effect); *see also id.* §§ 160.201(b)(2) (father-child relationship is established by such acknowledgment), 160.201(b)(3) (adjudication of man's paternity). "Unless parental rights are terminated, a parent-child relationship established under [Chapter 160 of the Family Code] applies for all purposes, except as otherwise provided by another law of this state." *Id.* § 160.203.

Under the Estates Code, "[f]or purposes of inheritance, a child is the child of the child's biological father if: (1) the child is born under circumstances described by Section 160.201, Family Code; (2) the child is adjudicated to be the child of the father by court decree under Chapter 160, Family Code; (3) the child was adopted by the child's father; or (4) the father executed an acknowledgment of paternity under Subchapter D, Chapter 160, Family Code . . . ." TEX. EST. CODE ANN. § 201.052(a) (West 2014).

In contrast to the Family Code and Estates Code, the Wrongful Death Act does not expressly define who may be considered a child of a decedent; nor does it expressly incorporate the Family Code or the Estates Code. *Garza*, 768 S.W.2d at 275; *Brown*, 764 S.W.2d at 222.

*Challenges to paternity*

The Family Code provides that specifically enumerated individuals may establish or challenge paternity by genetic testing under narrowly defined

11

parameters. First, the parties to an initial proceeding to determine parentage may request a court order that a child and "other designated individuals" submit to genetic testing. TEX. FAM. CODE ANN. § 160.502(a). Second, testing is admissible to adjudicate parentage "with the consent of both the mother and the presumed, acknowledged, or adjudicated father." *Id.* § 160.621(c)(1). Third, a man who previously had acknowledged his paternity or been adjudicated the father of a child without genetic testing, may, pursuant to the 2011 amendment to section 161.005, establish or challenge that paternity with genetic testing. *Id.* § 161.005; Act of Apr. 14, 2011, 82nd Leg., R.S., ch. 54, § 2, sec. 161.005, 2011 Tex. Gen. Laws 86, 87–88 (current version at TEX. FAM. CODE ANN. §§ 161.005(c)–(o)). But only the acknowledged father may raise such a challenge, and only within two years of learning the facts that lead him to question his paternity. *See* Act of May 17, 2013, 83rd Leg., R.S., ch. 227, § 1, sec. 161.005, 2013 Tex. Sess. Law Serv. 967, 968 (West) (codified at TEX. FAM. CODE ANN. § 161.005) (changing deadline for making such challenge from "first anniversary of the date on which the petitioner becomes aware of the facts alleged in the petition indicating that the petitioner is not the child's genetic father" to "second anniversary" of such date). In addition, the signer of an acknowledgment of paternity may later challenge its validity, but only until the time that a court affixes parental obligations based on the acknowledgment. *See* TEX. FAM. CODE ANN. § 160.308 (allowing signatory of

12

acknowledgment of paternity to challenge acknowledgment on bases of fraud, duress, or material mistake of fact, but only before issuance of order affecting child identified in acknowledgment).

Leaving aside these specific provisions relating to genetic testing, the Family Code also generally limits the class of persons who may challenge an acknowledgment of paternity. Section 160.309(d) provides that "[a] proceeding to challenge an acknowledgment of paternity . . . shall be conducted in the same manner as a proceeding to adjudicate parentage under Subchapter G." TEX. FAM. CODE ANN. § 160.309(d). Section 160.602 of Subchapter G, in turn, enumerates the persons who may adjudicate parentage: (1) the child; (2) the mother; (3) a man whose paternity is to be adjudicated; (4) a support enforcement agency or other government agency authorized by other law; (5) an authorized adoption or child-placement agency;(6) an authorized representative of an incapacitated or deceased person or minor who would otherwise be entitled to maintain a proceeding; (7) a person closely related to a deceased mother; and (8) an intended parent. TEX. FAM. CODE ANN. § 160.602(a). The relators do not fall within the categories of individuals with standing under the Family Code to challenge Stoker's acknowledgment.[2]

_____

[2] The relators argue that section 160.609(b) permits them to seek an adjudication of paternity of A.S. and K.D.S. *See* TEX. FAM. CODE ANN. § 160.609(b). That section requires that

13

*Effect of an acknowledgment of paternity under the Wrongful Death Act*

Nevertheless, the relators argue that they have standing to make a paternity challenge under the Wrongful Death Act, relying on the Texas Supreme Court's decisions in *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220 (Tex. 1988) and *Garza v. Maverick Market, Inc.*, 768 S.W.2d 273 (Tex. 1989). In these wrongful death cases, the Court held that children must prove by clear and convincing evidence that they are the biological children of the decedent to be wrongful death beneficiaries. Because the evidence places Stoker's relationship with A.S. and K.D.S. in controversy, the relators contend, genetic testing is relevant and discoverable in this wrongful death case.

In *Brown*, the earliest of these decisions, the Supreme Court addressed "whether the illegitimate children of a male decedent may recover under the Texas Wrongful Death Act." *Brown*, 764 S.W.2d at 221. In that case, the decedent had admitted to third persons that he was the father of three children, but there is no

> If a child has an acknowledged father or an adjudicated father, an individual, other than the child, who is not a signatory to the acknowledgment or a party to the adjudication and who seeks an adjudication of paternity of the child must commence a proceeding not later than the fourth anniversary of the effective date of the acknowledgment or adjudication.
>
> *Id.* None of the relators, however, is an "individual" as the Family Code defines it. *See*, *e.g.*, *id.* §§ 160.102(3) (defining "child" as "an individual of any age"), 160.102(6)–(11), (16). Moreover, none of them has commenced a proceeding under the Family Code within the meaning of section 160.609.

14

indication in the Court's opinion that he had legally acknowledged his paternity or been adjudged to be the children's father. *Id.* at 222. The Court held that, as "filial descendants," children who were not born during a father's marriage have standing to recover under the Act. *Id.* at 222–23. It further held that proof of a child's standing as a beneficiary is a necessary showing under the Wrongful Death Act and subject to a clear and convincing evidence standard, the same standard adopted by the Family Code and former Probate Code. *Id.*

The *Garza* Court took this analysis a step further, addressing the question "whether . . . a posthumously-born and unrecognized illegitimate child may sue for the wrongful death of his father under the Texas Wrongful Death Act." *Garza*, 768 S.W.2d at 274. In that case, the putative father also had never adjudicated his legal paternity of the child. The court held that it was "inappropriate to incorporate the requirements of legitimation under the Family Code into the Wrongful Death Act," and that "an illegitimate child need not be 'recognized' in accordance with other bodies of law not specifically applicable to the Wrongful Death Act." *Id.* at 275. The relators contend that, in light of these authorities, the trial court abused its discretion in treating Stoker's paternity of A.S. and K.D.S. as a settled question.

We reject that contention. Both *Brown* and *Garza* addressed the standing of children as wrongful death beneficiaries when neither marriage nor a court proceeding had determined their legal father. *See Garza*, 768 S.W.2d at 275;

15

*Brown*, 764 S.W.2d at 221–22. At the time that those cases were decided, "legitimate" and "illegitimate" were defined terms in the Family Code, with the latter used to describe, essentially, children born outside of marriage and never legally acknowledged pursuant to various procedures of the Family Code. *Garza*, 768 S.W.2d at 274–75; *Brown*, 764 S.W.2d at 222; *see also* TEX. FAM. CODE ANN. § 11.01(8) (West 1988) (defining "illegitimate child" as "a child who is not and has never been the legitimate child of a man," whose paternity has not been adjudicated, and whose parent child-relationship with a biological mother and father, if any, has not been terminated), *repealed by* Act of May 26, 1989, 71st Leg., R.S., ch. 375, § 1, sec. 11.01, 1989 Tex. Gen Laws 1477, 1477; *id.* § 12.02(c) ("A child is the legitimate child of a man if the man's paternity is established under the provisions of Chapter 13 of this code."), *repealed by* Act of May 26, 1989, 71st Leg., R.S., ch. 20, § 6, sec. 13.02, 1989 Tex. Gen. Laws 1477, 1478–79; *id.* § 13.21 (providing methods by which a child could be voluntarily legitimized), *amended by* Act of May 26, 1989, 71st Leg., R.S., ch. 375, § 17, sec. 13.21, 1989 Tex. Gen Laws 1477, 1481–82, *and repealed by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282; *see also Espree v. Guillory*, 753 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (discussing procedures for voluntary legitimation under statutes then in effect). The Legislature has since abolished these distinctions and procedures.

It is in this context that we review the Supreme Court's jurisprudence. The *Brown* Court's holding that "'children,' in the Wrongful Death Act, means filial descendants" was not a statement of the obvious, but addressed the then-open question of whether a child must be legally recognized to acquire standing in a wrongful death suit. *Brown*, 764 S.W.2d at 223. Likewise, the *Garza* Court's refusal to incorporate "the legitimation provisions of the Family Code" into the Wrongful Death Act referred to the then-applicable procedures available during the life of a father for changing a child's legal status. *Garza*, 768 S.W.2d at 275.

The relators argue that *Garza* compels the conclusion that an acknowledgment of paternity under the Family Code will not establish standing to sue for wrongful death. But that argument fails to consider that both *Garza* and *Brown* addressed cases in which legal paternity had never been established; their facts are inapposite. With the adjudication of Stoker's paternity in this case at its settled conclusion before Stoker's death, the trial court was not bound to re-open the issue in a wrongful death proceeding by compelling the children to undergo genetic testing.

The relators also rely on our sister court's decision in *Gurka v. Gurka*, 402 S.W.3d 341 (Tex. App.—Houston [14th Dist.] 2013, no. pet.). In *Gurka*, the purported father of a deceased child brought a wrongful death claim, but the defendants challenged the father's standing on grounds that he was not the

17

biological father of the child. *Gurka*, 402 S.W.3d at 343. During the course of a prior paternity action, the father acknowledged his relationship to both the deceased child and another child by the same mother, although no DNA test or blood test was performed at that time. *Id.* at 343–44. The trial court in the wrongful death action admitted the family court's order acknowledging paternity, but conducted a bench trial in which the parties adduced evidence of the father's paternity. *Id.* at 344. The mother testified that the purported father was not the biological father. *Id.* at 345. At least some evidence cast doubt on the plaintiff father's paternity, but the parties did not submit any genetic testing results to the court. *Id.* at 344–46. The trial court determined that the plaintiff father was the child's biological father. *Id.* at 346. The wrongful death defendants appealed, arguing that the trial court's decision lacked legally sufficient evidence to support it. *Id.* Our sister court affirmed the trial court's ruling, holding that the evidence presented was sufficient to find that the plaintiff was the deceased child's father. *Id.* at 349–50. But the *Gurka* court did not address whether the family court order was dispositive or whether the trial court should have compelled genetic testing. Further, in that case, the mother, one of the parties with standing to establish or challenge paternity under the Family Code, is the party that challenged the paternity of the plaintiff father. *Id.* at 345. By contrast, in this case, no parent of either A.S. or K.D.S. challenged Stoker's relationship to the children.

18

Stoker's paternity of both A.S. and K.D.S. was established as a matter of law under the Family Code before his death, and Stoker never challenged his paternity during his lifetime. The Family Code allowed Stoker to rescind his acknowledgments of paternity, but only until the earlier of the sixtieth day after the effective date of each acknowledgment or "the date a proceeding to which the signatory is a party is initiated before a court to adjudicate an issue relating to the child, including a proceeding that establishes child support." TEX. FAM. CODE ANN. § 160.307(a) (West 2014). These deadlines ran as to each child well before Stoker's death, and Stoker did not rescind the acknowledgments. After those periods expired, Stoker had the opportunity to "commence a proceeding to challenge [each] acknowledgment" if he could establish that genetic testing had failed to identify him as the father of the child in question. *Id.* § 160.308(a), (d). But this challenge was also only available before entry of a child support order affecting the child in question, and Stoker did not make use of these procedures. *Id.* § 160.308(a). Finally, Stoker could have sought to terminate his relationship with each child. *Id.* § 161.005(e). None of these procedures grants third-party, non-family defendants in a wrongful death action standing to challenge Stoker's paternity of the children. At the time of his death, Stoker's paternity of each child had been fully adjudicated by Texas courts. To re-open the issue after Stoker's death is inconsistent with the Legislature's proviso that "a parent-child relationship

established under [Chapter 160 of the Family Code] applies for all purposes, except as otherwise provided by another law of this state." *Id.* § 160.203.

## Conclusion

Given that their father's legal paternity had been established at the time of his death, the trial court properly rejected the relator's contention that good cause exists for compelling genetic testing, as a means of requiring A.S. and K.D.S. to re-confirm their relationship to him. *See* TEX. R. CIV. P. 204.1(c). Accordingly, we deny the petitions for writ of mandamus. We deny all pending motions as moot.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.