**Affirmed and Opinion filed May 23, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00978-CV

---

## GLORIA GURKA AND ERIC BROCK, Appellants

## V.

## TRACY GURKA, Appellee

---

### On Appeal from the 215th District Court
### Harris County, Texas
### Trial Court Cause No. 2010-42514A

---

## O P I N I O N

This appeal is from the trial court's determination that Tracy Gurka is the biological father of Shane Gurka. Shane allegedly drowned while at the residence of appellants Gloria Gurka and Eric Brock.[1] Tracy filed a wrongful death action against appellants.[2] Appellants contested Tracy's standing to file such a claim, *i.e.*,

---

[1] Gloria Gurka is Tracy Gurka's mother.

[2] Christienah Robertson, Shane's mother, also filed a wrongful death action that was

whether he was Shane's biological father. The trial court held a bench trial on the issue of paternity and found that clear and convincing evidence established that Tracy was Shane's biological father. The court subsequently entered written Findings of Fact and Conclusions of Law.

When appellants first brought this appeal, we abated the case and remanded to the trial court to permit the parties to obtain an order severing the paternity claim from the wrongful death action. Subsequently, the trial court entered an order severing the paternity action and stating that it is a final appealable cause. Consequently, we have reinstated the appeal.[3]

In their first three issues, appellants challenge the legal and factual sufficiency of the evidence to support the trial court's paternity determination. In their fourth issue, appellants contend the trial court erred in admitting into evidence a custody order from another court pertaining to Shane. And in their fifth issue, appellants contend the court erred in permitting Gloria Gurka to testify after the close of evidence and closing arguments.[4] We affirm.

## *Background*

At the evidentiary hearing on paternity, Tracy Gurka testified that, in his mind, there was no question he was Shane's father. He stated that he was living with Christienah Robertson, Shane's mother, in 2006 when she became pregnant with their first child, Trent. After Tracy moved out, a paternity action was filed in which Christienah sought child support and Tracy sought access. During the

consolidated with the one filed by Tracy. Robertson is not a party to this appeal.

[3] The trial court severed the paternity action into cause number 2010-42514A, while retaining the original cause number (2010-42514) for the wrongful death action. This appeal concerns only the paternity action, cause number 2010-42514A.

[4] Although Gloria is a defendant in the wrongful death action and an appellant in this severed action, she was called to the stand in support of Tracy's claim that he is Shane's father.

2

pendency of that action, Christienah became pregnant with Shane. Although the couple was not living together at the time, Tracy testified that they still had a sexual relationship. Christienah told Tracy that he was Shane's father, and he moved back in with her while she was pregnant. Shane was born on March 26, 2008, and Tracy was present in the delivery room. Shane was born three weeks before his due date and had to stay at the hospital for a week, during which time Tracy visited him every morning before work and every evening after work. Tracy further testified that no DNA testing was done when Shane was born because Christienah told him he was Shane's father and he believed he was Shane's father. When Christienah took Shane home, Tracy stayed with them to help because he wanted to spend as much time with his new baby as he could.

The paternity action was amended to include Shane, and the case was settled with Tracy acknowledging that he was the father of both Trent and Shane. When Tracy's counsel offered the trial court's order in that case into evidence in the present case—not to establish that he was determined to be Shane's father but merely for the purpose of showing that Tracy had acknowledged paternity— appellant's counsel objected that the conclusions in the order were not relevant to the trial court's determination in the present case. The trial court admitted the agreed order into evidence, stating that although it was not dispositive on the issue of paternity, it was relevant to the determination.

Tracy paid child support to Christienah for years, although he acknowledged that he fell behind at times and had to pay arrearages. Tracy also stated that he exercised his visitation rights as often as he could and sometimes took possession of the children even when it was not his time under the order to do so.

According to Tracy, when Shane was about seven or eight months old, Christienah "blurted out" during an argument that Tracy was not Shane's father.

3

This was the first time she had ever said anything like this. Tracy said that he did not believe her and never told anyone that Shane was not his son; however, he did complete a "drugstore [paternity testing] kit" that he acquired from a pharmacy. He said that the results came back as inconclusive. Tracy admitted that he may have mentioned the results of the test to Christienah but said he did not do anything to follow up on the testing and never took the results to Christienah's house. After their argument, Christienah never again told Tracy that he was not Shane's father, she continued to act as though he was Shane's father, and Tracy continued to have visitation with Shane and pay child support. When asked about why Christienah had testified in her deposition that he was not Shane's father, Tracy speculated, "To be hateful." He further stated "[s]he lies," has done similar things to other people in her family, and is a volatile person.

Tracy further denied that Christienah ever told him that a man named Daniel Gay was actually Shane's father. Tracy recalled meeting Gay once at Christienah's house but denied they discussed Shane.

Tracy testified that Shane looked liked Trent, Shane's older brother, particularly in regards to his mouth, chin, and nose. Tracy further explained that Shane shared certain characteristics that he said are common in the Gurka family, including flat feet and ears similar to Tracy's mother's distinctive ears. He also said that Shane and Trent shared certain characteristics in the way they behaved. Photographs of Shane and Trent also were admitted into evidence.

On cross-examination, appellants' counsel challenged Tracy with several statements made in his deposition.[5] Tracy admitted that in his deposition, he

---

[5] Excerpts from the deposition were attached to appellants' motion for summary judgment. Tracy also filed an affidavit along with his response to the motion that was more in line with his testimony at the hearing than his deposition responses.

4

testified he was not Shane's biological father. Appellants' counsel further asked Tracy about his deposition testimony that Christienah mentioned Daniel Gay did not desire to be part of Shane's life. Counsel also read a question and answer from Tracy's deposition, wherein counsel asked, "And then [the paternity test] came back that whatever percentage certainty that you were not the biological father of Shane?" Tracy acknowledged that he answered that question by saying, "Correct." Tracy agreed that he had some doubt regarding Shane's parentage after Christienah told him in an argument that he was not the father. Tracy acknowledged sometimes engaging in "selective listening" when Christienah talked to him. Tracy further admitted that a restraining order was issued against him in the earlier paternity case.

On re-direct, Tracy explained that when he testified in his deposition, he was aware that Christienah had said in her deposition that he was not the father. He further stated that he had not entirely understood the question about "percentage certainty" at his deposition. He thought that he was agreeing that the test revealed he might or might not be the father because it was inconclusive. Additionally, Tracy suggested that when Christienah said Daniel Gay did not want to be involved with Shane, that was just her way of making the fact she told Tracy he was not the father "go away." Tracy said that he did not believe her when she said Gay was Shane's father. Other than that one time when she was angry, she never told Tracy that he was not Shane's father. He again denied ever talking to Gay about Shane.

Christienah Robertson testified by deposition. She stated that Daniel Gay was Shane's biological father. She further testified that she saw the results of the paternity test Tracy purchased when they fell out of a book at her house. According to Christienah, the results excluded Tracy as the father. She knew Gay

5

was the father because Shane "looked exactly like" him. She said there were no other possibilities for who the father could be except Tracy and Gay. Before Shane was born, Christienah wanted to be "done" with Tracy. She also acknowledged that Gay had had "minimal" contact with Shane and that she never intended to seek child support from him because there had been a verbal agreement between her, Gay, and Tracy that Tracy would be considered Shane's father and the issue "would never ever, ever be brought up, ever." She said that Shane "didn't look like the Gurka clan at all" and that her father once saw a photograph of Gay as a child and thought it was Shane in the picture. Further in her testimony, Christienah acknowledged that Tracy was with her at the hospital when Shane was born. She also mentioned that she had a temporary protective order entered against him in 2008.

After both sides rested and presented closing arguments, the trial court permitted Gloria Gurka to testify over the objection of appellants' attorney. Gloria testified that neither Christienah nor Tracy ever told her that Tracy was not Shane's father. Tracy's position had always been that he was the father. Gloria said that she thought Shane looked more like Christienah. She also said that although Tracy was blond, darker features such as Shane's ran in her family. She had no reason to think Tracy was not Shane's biological father.

At the conclusion of the hearing, the court announced its holding that Tracy was Shane's biological father. In written Findings of Fact, the trial court found as follows:

> 1. There was no expert witness testimony.
>
> 2. Testimony regarding a paternity test (not in evidence) was not dispositive.
>
> 2. [sic] There is minimal evidence that Mr. Gay is the biological father of the deceased child.

3. When Tracy Gurka made the statement that he was not the father of the child, it was statement [sic] against his interest.[6]

4. When [Christienah] Robertson made the statement that Tracy Gurka was not the father of the child, it was a statement in favor of her interest.

5. The testimony regarding physical characteristics of the child that were similar to those of Tracy Gurka or his family members [was] helpful and uncontroverted, therefore taken as true by the trier of fact.

6. Testimony of familial history of the child and the family of Tracy Gurka [was] uncontroverted and also taken as true by the trier of fact.

7. Testimony regarding the behavior of the parties, [Christienah] Robertson and Tracy Gurka, before and after the birth of the child were consistent with Tracy Gurka being the biological father of the child and [was] uncontroverted, therefore, taken as true by the trier of fact.

8. An Agreed Order of Parentage signed by both parties shortly after the birth of the child in which both parties state that deceased child is the child of Tracy Gurka and signed by a judge in court of competent jurisdiction was submitted into evidence.

9. No blood tests or DNA test were submitted into evidence.

In its Conclusions of Law, the court stated:

1. Case law states that when biological parentage [is] contested, the trier of fact should look at whether the child resembles or has similarities to the parent in question, prior statement by the alleged father that he was the father of the child or other admissions by him bearing on his relationship to the child are to be considered, and testimony as to the periods of conception and gestation.

2. The trier of fact received sufficient evidence of the factors above to determine by clear and convincing evidence that Tracy Gurka is the biological father of the deceased child.

As mentioned above, the trial court subsequently severed the paternity issue

---

[6] At the conclusion of the hearing, the trial court also made the point that when Tracy accepted paternity of Shane, in the agreed family law order, he was thereby subjecting himself to detrimental financial consequences (*e.g.*, child support payments).

from the wrongful death action and stated that the court's determination on paternity was final and appealable. We now turn to the merits of appellants' issues on appeal.

## *Sufficiency of the Evidence*

In their first three issues, appellants contend that the trial court's determination that Tracy is Shane's biological father was not supported by legally or factually sufficient evidence.[7] Proof of the paternity of a child born out of wedlock—in the context of a wrongful death action, as well as in various other contexts—must be by clear and convincing evidence. *See Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex. 1989) (adopting clear and convincing standard in wrongful death cases to maintain consistency with probate and family codes). The party asserting paternity has the burden of proof. *See Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273, 275-76 (Tex. 1989); *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 704 (Tex. App.—Houston [14th Dist.] 2010, no pet.).[8]

Whenever the standard of proof at trial is elevated, the appellate review standard must likewise be elevated. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004). Accordingly, in reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the finding to determine

---

[7] Appellants specifically state their first three issues presented as (1) "[t]he Court's finding that Tracy Gurka was the biological father of Shane Gurka is against the greater weight and preponderance of the evidence"; (2) "[t]he evidence presented at trial conclusively establishes that Tracy Gurka is not the biological father of Shane Gurka"; and (3) Tracy Gurka is not a "parent" as defined by the Texas Wrongful Death Act.

[8] Although the cited cases all involved circumstances wherein a child was seeking to establish their connection to a deceased father, the parties appear in agreement that these cases also apply in the reverse situation as we are confronted with here, *i.e.*, when a purported father seeks to establish his parentage of a deceased child. Neither side argues that the standards should be different in the two contexts.

8

whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 170 (Tex. 2005). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so and disregarded all contrary evidence that a reasonable factfinder could have disregarded. *Id.* This, of course, does not mean we disregard all evidence that does not support the finding. *Id.*

In a factual sufficiency review of an issue determined under the clear and convincing standard, the inquiry is "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *see also Barras v. Barras*, No. 14-11-00954-CV, 2013 WL 266250, at *11-12 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, no pet. h.). The evidence must be found factually insufficient when, viewed in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction on the issue. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Even under this heightened standard, a reviewing court examines all of the evidence to determine whether the finding in question was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Barras*, 2013 WL 266250, at *12.

In the context of a paternity determination in a wrongful-death action, the factfinder must decide what evidence is clear and convincing on a case-by-case basis. *Garza*, 768 S.W.2d at 276. Blood tests, when available, may help show the alleged father's paternity. *See id.* at 276; *Briggs Equip.*, 321 S.W.3d at 704. Evidence of physical resemblance of the child to the alleged father or to someone else, either by photographs or testimony of a knowledgeable witness may also be helpful. *See Garza*, 768 S.W.2d at 276; *Briggs Equip.*, 321 S.W.3d at 704. Prior

statements by the purported father that he was the father of the child, or other admissions bearing on his relationship to the child, may also be considered, as may evidence regarding the time periods of conception and gestation. *See Garza*, 768 S.W.2d at 276; *Briggs Equip.*, 321 S.W.3d at 704.[9]

Appellants in the present case do not differentiate in their arguments between the legal and factual sufficiency standards. They emphasize generally that the following evidence contradicts the trial court's finding that Tracy was Shane's biological father:

- Tracy and Christienah were never legally married and were not living together when Shane was conceived.

- No "formal" DNA testing was performed and, according to Christienah, the "drug store" test Tracy purchased excluded him as the father.

- Christienah and Tracy both testified in their depositions that Tracy was not Shane's father. Christienah stated instead that Daniel Gay was the father and that she, Tracy, and Gay agreed that Tracy would be Shane's father even though Gay was the biological father.

- Christienah stated that Shane looked like Gay and did not look like Tracy or Trent (a child she admits she conceived with Tracy).

Appellants acknowledge that Tracy acted in *loco parentis* regarding Shane but insist the evidence demonstrates he was not Shane's biological parent. They further assert that Tracy's testimony at the hearing was not credible because of the extent to which it conflicted with his prior deposition testimony.

---

[9] As shown above, the trial court used similar language in its Conclusions of Law.

At the hearing, however, Tracy explained his inconsistent deposition testimony was in response to hearing that Christienah said in her deposition that he was not Shane's father. He also pointed out that, except for her deposition and one other time when they had been arguing, Christienah maintained that he was in fact Shane's father. The trial court, as finder of fact, was free to believe Tracy's hearing testimony and discount the deposition testimony of Tracy and Christienah. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Miranda v. Byles*, 390 S.W.3d 543, 553 (Tex. App.—Houston [1st Dist.] 2012, pet. filed). As the trial court pointed out, when Tracy accepted paternity of Shane in the agreed family law order, it was a statement detrimental to his financial interest, and when Christienah stated he was not the father in her deposition, it was a statement arguably in favor of her financial interest. The trial court was certainly within its discretion to consider the different contexts of these statements in choosing which to believe.

The trial court was also free to believe Tracy's testimony that the store-bought paternity test was inconclusive over Christienah's testimony that she saw the results when they fell out of a book at her house and that they excluded Tracy as Shane's father. The trial court was also well within its discretion as factfinder to place more weight on the testimony from Tracy and Gloria that Shane had characteristics in common with members of their family than it did on Christienah's testimony that Shane looked like Gay. *See generally Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011).

In sum, the trial court had before it evidence that Christienah consistently represented Tracy was Shane's father except for one time when she was angry with him and another when she arguably stood to gain financially from saying otherwise. Tracy, meanwhile, accepted his paternity of the child even when it was

11

detrimental to his financial interests. Furthermore, except for Tracy's retracted deposition testimony, the only evidence indicating Tracy was not Shane's father came from Christienah's arguably self-serving deposition testimony, which the trial court reasonably could have determined was not credible. There was conflicting evidence regarding whether Shane's physical characteristics were similar to characteristics common in the Gurka family.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that the court reasonably could have formed a firm belief or conviction that Tracy is Shane's biological father. *Diamond Shamrock*, 168 S.W.3d at 170. Additionally, the evidence appears such that the court's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Barras*, 2013 WL 266250, at *12. In other words, the evidence is legally and factually sufficient to support the trial court's finding that Tracy was Shane's biological father. We overrule appellant's first three issues.

*Prior Court Order*

In their fourth issue, appellants contend that the trial court erred in admitting into evidence a prior order from a family law court regarding parental rights to Shane. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

Appellants cite *Garza* for the proposition that wrongful death actions and family court proceedings utilize different standards for determining parentage. 768 S.W.2d at 275. Indeed, the *Garza* court expressly rejected the incorporation of the requirements for proving paternity contained in the Texas Family Code into the wrongful death context. *Id.* The family court order in this case, however, was not offered as a determination of parentage but was offered only for the limited purpose of showing that Tracy had accepted his parentage of Shane in the family

12

court proceeding—the order in question being an agreed order naming Tracy as Shane's father and requiring him to pay child support. *See generally* Tex. R. Evid. 105(a) ("When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope . . . ."). The trial court articulated an understanding of the limited role of the family court order as it mentioned its admission in the Findings of Fact but did not deem it to be dispositive on the issue of paternity. Accordingly, appellant has not demonstrated that the trial court abused its discretion in admitting the order. We overrule issue four.

### *Reopening of Evidence*

In issue five, appellants assert that the trial court erred in permitting Tracy to call Gloria Gurka to the stand after both sides had rested and presented closing argument. Trial courts have broad discretion to permit additional evidence to be offered at any time. *See* Tex. R. Civ. P. 270; *see also In re Hawk*, 5 S.W.3d 874, 876-77 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (advising courts to liberally exercise their discretion under Rule 270 to permit both sides to fully develop their cases).

In his trial objection, appellants' attorney complained that when Gloria was called to the stand, the evidence had already been closed and Gloria had not been subpoenaed until the very morning of the hearing, despite the fact the hearing had been set "for a long time." On appeal, however, Appellants offer no analysis or citation to authority supporting their position that the trial court abused its discretion in permitting Gloria, a party, to testify, much less that the subpoena was relevant to the analysis. *See* Tex. R. App. P. 38.1(i) (providing appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and the record); *McCright v. Rodriguez*, No. 01-07-00480-

CV, 2008 WL 2548814, at *9 n.7 (Tex. App.—Houston [1st Dist.] June 26, 2008, no pet.) (holding appellant failed to cite authority or show that trial court abused its discretion in reopening evidence); *Brown v. Hearthwood II Owners Ass'n*, 201 S.W.3d 153, 161 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (recognizing that failure to cite authority or advance substantive analysis waives appellate issue); *see also* Tex. R. Civ. P. 181 ("Either party to a suit may examine the opposing party as a witness . . . ."). Accordingly, appellants have not shown the trial court abused its discretion in permitting Gloria to testify, and we overrule their fifth issue.

Having overruled all of appellants' issues, we affirm the trial court's judgment.

/s/    Martha Hill Jamison
       Justice

Panel consists of Justices Christopher, Jamison, and McCally.