Darrell TURK, Individually and as Representative of the Estate of Michael Blair, Deceased, Plaintiff,

Kimberly Blair Olaniyi, Individually and as Representative of the Estate of Michael Blair, Deceased, Plaintiff–Intervenor,

v.

Deputy Sheriff T. MANGUM, et al., Defendants

Civil Action No. H–15–1003

United States District Court, S.D. Texas, Houston Division.

Signed July 17, 2017

Jimmie L. J. Brown, Jr., Attorney at Law, Debra V. Jennings, Law Office of

Debra Jennings, Missouri City, TX, for Plaintiff.

Jeffrey Mark Stern, Stern Law Group, Bellaire, TX, Joseph R. Corteguera, Stern Law Group, Houston, TX, for Plaintiff–Intervenor.

Randall Weaver Morse, Salvatore Philip LoPiccolo, II, Richmond, TX, for Defendants.

## ORDER

DAVID HITTNER, United States District Judge

Pending before the Court are the Opposed Motion of Defendant Mangum for DNA Testing to Discover Plaintiff Turk's Standing (Document No. 102) and Plaintiff's Amended Response to Defendant's Motion for Blood/DNA Testing and FRCP Rule 11 Motion for Sanctions for Frivolous Filing (Document No. 106). Having considered the motions, submissions, and applicable law, the Court determines the motion for sanctions should be denied and the motion for DNA testing granted. The Court further determines that a hearing should be set to determine whether Plaintiff Darrell Turk has standing in this suit.

## I. BACKGROUND

This case arises following the death of Michael Blair ("Blair") during the Fort Bend Sheriff's Department's response to a call for assistance over concerns Blair might harm himself. Blair's purported father, Plaintiff Darrell Turk ("Turk"), filed suit following Blair's death, and Blair's mother, Intervenor Kimberly Blair–Olaniyi ("Blair–Olaniyi"), intervened in the suit. On November 4, 2013, Defendants Deputy Sheriff T. Mangum ("Mangum"), Deputy Sheriff R. Hartfield ("Hartfield"), and Deputy Sheriff Sergeant J. Moore ("Moore") (together, the "Defendants"),

responded to a call for assistance placed by Blair–Olaniyi. During the response, Mangum discharged his weapon while Blair was in a bathroom, allegedly with a knife, and Blair expired from the gunshot wounds shortly thereafter.

On April 15, 2015, Turk filed suit against the Defendants and then subsequently amended the complaint. The operative complaint at the time of this Order is Plaintiff's Fourth Amended Complaint, which was filed October 25, 2015. On November 4, 2015, Blair–Olaniyi filed an intervenor's complaint that stated the same facts and claims as the fourth amended complaint. On November 16, 2015, the Defendants in their individual capacities moved to dismiss the fourth amended complaint on the basis of qualified immunity and failure to state a claim for conspiracy. On the same grounds, the Defendants moved to dismiss the intervenor's complaint on November 23, 2015.

As all parties had urged the Court to look to the video attached to the fourth amended complaint in resolving the motions to dismiss, the Court issued an order converting the motions into motions for summary judgments. The parties were given an opportunity to submit additional briefing and evidence. On July 12, 2016, Turk and Blair–Olaniyi, filed a joint response to the newly converted motion for summary judgment. The Defendants filed a joint reply on July 21, 2016. Turk and Blair–Olaniyi, with the Court's leave, filed a joint sur-reply on July 27, 2016. On September 30, 2016, the Court issued an order disposing of all claims in this case except the 42 U.S.C. § 1983 claim against Mangum for the use of deadly force.

On February 17, 2017, Mangum moved for discovery pursuant to Federal Rule of Civil Procedure 35, seeking a court order

for DNA testing of Turk, asserting Turk's paternity of Blair was in controversy. On February 27, 2017, Turk responded contending Turk's paternity was not at issue and simultaneously moving for sanctions against Mangum. The Court ordered supplemental briefing and the parties both filed their respective briefs on March 17, 2017. A hearing was held on the motion and supplemental briefs on April 24, 2017. The Court received argument in open court from counsel for Turk and Mangum. Blair–Olaniyi's counsel was present at the hearing, but Blair–Olaniyi did not file any briefing on the issue.[1]

## II. LAW & ANALYSIS

### A. Mangum's Standing to Challenge Turk's Assertion of Paternity

Mangum contends the Court should order DNA testing because Turk's paternity of Blair is in controversy. Turk contends Mangum lacks standing to challenge Turk's assertion of paternity under Texas law and that Turk acknowledged paternity of Blair.

#### 1. Standing for § 1983 Claims

The Court first turns to the statutes governing standing in a wrongful death action brought under 42 U.S.C. § 1983. State common law is used to fill gaps in the administration of the federal civil rights statutes. 42 U.S.C. § 1988. Standing is one such area where federal courts look to state common law. *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004). In a wrongful death or survival action brought under 42 U.S.C. § 1983, a party must have standing under the state wrongful death and survival statutes. *Id.* at 383–84 (citing *Rhyne v. Henderson Cty.*, 973

---

1. The Court granted Blair–Olaniyi leave to file briefing in the order for supplemental briefs, but did not order her to do so. *Order,* Document No. 110.

F.2d 386, 390–91 (5th Cir. 1992), which held Texas's wrongful death and survival statutes were incorporated into § 1988 as a wrongful death remedy). The Texas Wrongful Death Statute ("TWDS") provides: "An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." TEX. CIV. PRAC. & REM. CODE § 71.004(a). Under the Texas Survival Statute ("TSS"), "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." *Id.* § 71.021(b). The TSS preserves the estate's claim for the decedent's personal injuries; the TWDS provides recovery for the injuries of the statutorily identified classes of persons, separate from the claims of the estate. *Pluet,* 355 F.3d at 384.

Turk filed the instant suit on behalf of both himself as an individual and Blair's estate. Blair–Olaniyi intervened in this suit on behalf of both herself and Blair's estate. Mangum does not assert Blair–Olaniyi lacks standing to file suit either in her individual capacity or as the representative of Blair's estate. Any recovery for Blair's personal injuries belongs to Blair's estate pursuant the TSS. An uncontested representative of Blair's estate has properly intervened in this action. Therefore, regardless of whether the Court ultimately determines Turk has standing to bring this action, the suit is properly before the Court as to Blair's estate.[2]

### 2. Establishing Paternity under Texas Law

■ Turk asserts he has validly established paternity under Texas law and Mangum lacks standing to challenge that es-

tablishment. Mangum contends Turk has not validly established paternity under Texas law.

Paternity can be established five ways in Texas: (1) by showing paternity is statutorily presumed; (2) through a formal adjudication of paternity; (3) by voluntarily filing an affidavit of paternity that complies with the statutory requirements; (4) adopting the child; or (5) consenting to a wife's use of assisted reproduction. TEX. FAM. CODE § 160.201(b). The term "presumed father" is defined as "a man, who by operation of law under Section 160.204, is recognized as the father of a child until that status is rebutted or confirmed in a judicial proceeding." *Id.* § 160.102(13). Paternity is presumed if the child is conceived or born during the pendency of a marriage, if the father subsequently married the mother and voluntarily asserted paternity as consistent with the statutory requirements, or if during the first two years of the child's life the father resided with the child and held out the child as his own. *Id.* § 160.204(a).

The term "adjudicated father" is defined as "a man who has been adjudicated by a court to be the father of a child." *Id.* § 160.102(1). A proceeding to adjudicate paternity may be maintained by a person or entity with standing under § 160.602. *Id.* §§ 160.601–602. An adult child with no presumed, acknowledged, or adjudicated father is the only person who can maintain a proceeding to establish his parentage. *Id.* § 160.602(b).

An acknowledgment of paternity may be signed by the child's mother and the purported biological father with the intent to establish the man's paternity. *Id.* § 160.301. "A valid acknowledgment of pa-

---

2. See, *infra* Part II.B,1 n.13, regarding Blair-Olaniyi's capacity to sue on behalf of Blair's estate. Further, the Court notes Blair–Olaniyi's claim to damages in her individual capac-
ity is properly before the Court regardless of whether Turk has standing or her capacity to sue on behalf of the estate.

ternity filed with the vital statistics unit is the equivalent of an adjudication of the paternity of the child." *Id.* § 160.305. An acknowledgement of paternity either takes effect on the date of birth of the child or the filing of the document with the vital statistics office, whichever is the latter. *Id.* § 160.304(c); *see id.* § 160.304(b) (stating an acknowledgment of paternity can be signed prior to a child's birth). A valid acknowledgment of paternity must: (1) be in a record; (2) be signed under the penalty of perjury by the mother and man seeking to establish paternity; (3) state whether there is a presumed father and that the child does not have another acknowledged or adjudicated father; (4) state whether genetic testing occurred and if the results are consistent with the claim of paternity; and (5) state the signatories understand an acknowledgment is equivalent to the judicial adjudication of paternity and is only challengeable in limited circumstances. *Id.* § 160.302(a).

Turk can show paternity under Texas law by showing one of the following: (1) he is the presumed father; (2) he is the adjudicated father; or (3) he has validly acknowledged paternity.[3] Turk concedes that he is not a presumed father under Texas law.[4] No document showing paternity has been adjudicated was submitted to the Court. Nor does any party contend paternity was adjudicated. Therefore, the only remaining avenue for Turk to establish paternity is through a valid acknowledgment of paternity. Turk contends the affidavit he submitted attached to his response is a valid acknowledgment of paternity. It is not. The acknowledgement of paternity attached has not been filed with the office of vital statistics. Nor is the affidavit otherwise statutorily sufficient. Only Turk signed the acknowledgment; Blair–Olaniyi, the mother, is not a signatory. The acknowledgment does not state whether genetic testing was performed and the results of that testing. Nor does the affidavit attest that Turk understands his acknowledgement is the equivalent of judicial adjudication of paternity. Turk, therefore, fails to establish he validly acknowledged paternity of Blair.[5] Accordingly, Turk is not the presumed, adjudicated, or acknowledged father of Blair under the Texas Family Code. However, the Court needs to address whether Mangum has standing to raise this deficiency.

### 3. Standing to Contest Turk's Assertion of Paternity

Turk contends Mangum does not have standing under the Texas Family Code to contest his assertion of paternity. Mangum contends he can contest paternity as Turk is not the presumed, acknowledged, or adjudicated father.

The persons and entities with standing to maintain a proceeding to adjudicate parentage are limited by statute. TEX. FAM. CODE § 106.602. Texas courts have held third parties in wrongful death suits do not have standing to challenge paternity based

---

**3.** The provisions for adoption and artificial reproduction are not applicable to the facts of this case.

**4.** *Plaintiff's Amended Response to Defendant's Motion for Blood/DNA Testing and FRCP Rule 11 Motion for Sanctions for Frivolous Filing,* Document No. 106, Exhibit 1 at 1 (*Affidavit of Father, Darrell Turk*) [hereinafter *Turk's Affidavit*]. Turk states that no father is listed on Blair's birth certificate and that at the time of

conception neither Turk nor Blair–Olaniyi were married to anyone.

**5.** Turk's affidavit is insufficient under Texas Family Code §§ 160.302 and 160.305's requirements. The Court need not decide whether an acknowledgment of paternity under § 160.301 of a deceased adult child—with no presumed, acknowledged, or adjudicated father—would be valid under Texas law.

on § 106.602's limitations. *In re Dallas Group of Am., Inc.*, 434 S.W.3d 647, 652–53 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). However, *In re Dallas*'s holding turned on legal paternity having been previously established. *Id.* at 654–55 ("[g]iven that their father's legal paternity had been established at the time of his death, the trial court properly rejected the relator's contention that good cause exists for compelling genetic testing").

Turk's paternity of Blair was not legally established at the time of Blair's death. Whether Blair–Olaniyi holds Turk out as Blair's father is legally immaterial. Turk was not the legally presumed, adjudicated, or acknowledged father. Mangum is not seeking to adjudicate Turk's paternity of Blair—Turk is. At the time of Blair's death, Turk had never legally established paternity. Blair died without a legally established father. Yet, Turk filed suit representing that he was Blair's father and submitted evidence in support of that representation. Section 106.602 will not bar a challenge to purported paternity where paternity has not been legally established. Here, no parent-child relationship was legally established. Accordingly the Court finds that § 106.602 does not bar Mangum from challenging Turk's assertion of paternity.[6]

## B. Turk's Standing to File Suit for Claims arising out of Blair's Death

The Court next turns to whether—absent having legally established paternity under Texas law—Turk has standing in this suit. Turk contends he is a parent within the meaning of the TWDS and an heir under the TSS. Mangum contends Turk does not have standing under the TSS and, pending the results of a DNA test, likely cannot establish standing under the TWDS. The Court addresses Turk's standing under the TSS and TWDS in turn.

### 1. Turk's Standing and Capacity under the TSS

■ Turk contends he has standing under the TSS because his status as an "heir" is established by his affidavit of paternity. Mangum contends Turk lacks capacity to sue under the TSS because he is not eligible to serve as the personal representative of Blair's estate.

Under the TSS, an "action survives to and in favor of heirs, legal representatives, and estate of the injured person." Tex. Civ. Prac. & Rem. Code § 71.021(b). Standing differs from capacity to sue under the TSS. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849–51 (Tex. 2005). A deceased's estate has standing to bring a survival action, not individuals; but limited classes of persons are statutorily granted capacity to bring the survival action on behalf of the estate. *Id.* Texas courts have incorporated the Texas Estates Code into TSS actions in determining whether a party has capacity to sue. *See id.* at 31–34 (holding that, because under the Texas Probate Code the deceased's property immediately vested in the surviving spouse, the spouse was an heir under the TSS and had standing despite failing to plead and prove no administration was necessary); *Lovato v. Austin Nursing Ctr., Inc.*, 113 S.W.3d 45, 52–53, 56 (Tex. App.—Austin 2003, pet. granted), *aff'd*, 171 S.W.3d 845 (Tex. 2005).[7]

---

6. As Turk has not legally established paternity under Texas law, the Court need not make an *Erie* determination as to whether § 106.602 would bar Mangum from challenging Turk's paternity in federal court.

7. In 2013, the Texas Estates Code supplanted the Texas Probate Code. *See* Tex. Est. Code §§ 21.002; 21.006.

■ "[G]enerally, personal representatives of the decedent's estate are the only people entitled to sue to recover estate property." *Shepherd v. Ledford,* 962 S.W.2d 28, 31 (Tex. 1998). Under the Texas Estates Code, a "personal representative" is defined as an executor or administrator, or a successor thereof. Tex. Est. Code § 21.031. A felon is precluded from serving as the executor or administrator of an estate. *Id.* § 304.003. An heir, as opposed to a personal representative, may maintain a survival action during the four-year period to open administration proceedings only if the heir "allege[s] and prove[s] that there is no administration pending and none necessary." *Rodgers,* 819 F.3d at 212–13 (quoting *Shepherd,* 962 S.W.2d at 31–32).[8]

■ Whether a person is an "heir" for purposes of the TSS is determined by reference to the relevant sections of the Texas Estates Code. *Rodgers v. Lancaster Police & Fire Dep't,* 819 F.3d 205, 212 (5th Cir. 2016). An "heir" is defined as "a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate." Tex. Est. Code § 22.015. The claim of an heir, who is not a "personal representative" under the Texas Estates Code at the time of filing but later acquires that capacity and amends the pleadings to reflect that status, will relate back to original filing for limitations purposes. *Lovato,* 171 S.W.3d at 851–53 (declining on appeal to determine whether Lovato proved heirship because she acquired capacity to sue as the estate's personal representative); *see also Pluet,* 355 F.3d at 385 n.3 (interpreting the intermediate court's opinion in *Lovato,* that the amended complaint related back, as turning on finding Lovato was an heir with standing at the time of filing).

When a person dies intestate—without a spouse or surviving descendants—the estate "passes in equal portions to the person's father and mother." Tex. Est. Code § 201.001(c). Section 201.052 delineates the circumstances under which "a child is the child of the child's biological father" for purposes of inheritance. *Id.* § 291.052(a). Inheritance rights to and from a child to a biological father are legally established where, under the Texas Family Code, paternity is (1) presumed, (2) adjudicated, (3) established via adoption, or (4) acknowledged.[9] *Id.* Section 291.052 limits the persons who can petition the probate court, for a posthumous determination of a right of inheritance, to purported biological children and persons claiming inheritance through a decedent's biological child. *Id.* § 291,052(c)(1)–(2). There is no statutory provision that allows a purported biological father of the deceased to petition the probate court for a posthumous determination of paternity for inheritance purposes. *See id.* Section 291.052(c) uses the broad term "persons," which therefore excludes all classes of persons not listed in subsections (c)(1) and (c)(2) from petitioning the probate court for a determination of inheritance rights under the code.[10] *Id.* Purport-

<hr>

8. The Texas Estates Code retains the four-year limitations period from the Texas Probate Code provision cited in the case law. *See* Tex. Est. Code § 301.002.

9. In full, § 291.052(a) provides paternal inheritance is established if: "(1) the child is born under circumstances described by Section 160.201, Family Code; (2) the child is adjudicated to be the child of the father by court decree under Chapter 160, Family Code; (3) the child was adopted by the child's father; or (4) the father executed an acknowledgment of paternity under Subchapter D, Chapter 160, Family Code, or a similar statement properly executed in another jurisdiction."

10. Any argument that § 201.052 only pertains to establishing the inheritance rights of a purported child and not a purported father is refuted by subsection (e), which addresses

ed fathers are not among the classes of persons listed in subsections (c)(1) and (c)(2). *See id.*

Turk does not have standing under the TSS to sue on behalf of Blair's estate; only Blair's estate has standing. Thus, the question before the Court is not whether Turk has standing under the TSS, but whether he has capacity under the TSS. Estate representatives and—in limited circumstances—heirs, have capacity to sue on behalf of an estate. Turk would need to show he is a personal representative or heir under the Texas Estates Code to potentially have capacity to bring this suit.

Turk contends there is no estate administration pending so an heir can bring suit rather than the estate representative.[11] However, Turk cannot legally establish that he is an "heir" with capacity to sue under the TSS. The TSS incorporates the Texas Estates Code definition of "heir." Blair died intestate without a spouse or descendants. Blair's estate therefore passes in equal portions to his mother and father as heirs. As Blair's purported father, Turk can establish he is an heir if he shows that he is Blair's father under the Texas Estates Code. Turk cannot do so. The Texas Estates Code requires that paternity be established under the Texas Family Code, or the child be adopted, for purposes of inheritance. TEX. EST. CODE § 201.052(a). As discussed above, *supra* Part II.A.2, there is no valid legal presumption, adjudication, or acknowledg-

ment of Turk's paternity of Blair under the Texas Family Code. There is no allegation Turk adopted Blair. Thus, Turk did not legally establish paternity prior to Blair's death for purposes of inheritance. As such, Turk is not an "heir" under the TSS and has no capacity to sue on behalf of Blair's estate.

Turk also is barred from establishing paternity in the probate court after Blair's death. The only classes of persons statutorily entitled to petition the probate court to establish paternity are a deceased father's purported biological children and purported heirs of his biological children. Turk does not fall within those classes of persons. Turk is Blair's purported father, not purported biological child. Therefore, without a legal presumption, acknowledgment, or adjudication of Turk's paternity, Turk has no right after Blair's death to legally establish paternity for purposes of inheritance even if he is Blair's biological father. Therefore, as a matter of law, Turk is not an "heir" under the Texas Estates Code and cannot establish himself as such.

The Court next turns to whether Turk has capacity to sue as the estate representative. Turk has not alleged he is the administrator or executor of Blair's estate, such that he is a "personal representative" within the meaning of the Texas Estates Code. Turk's status as a felon would, as a matter of law, preclude him from serving

---

purported fathers' inheritance rights. The inheritance rights of a "purported father" are severed if parental rights have been terminated. TEX. EST. CODE § 201.052(e). Additionally, subsection (a) states, generally, that: "[f]or purposes of inheritance, a child is the child of the child's biological father ...." *Id.* § 201.052(a). Subsection (a) contains no limiting language in the "for purposes of inheritance" clause, such as "inheritance by a purported biological child" or "inheritance by a purported father." *See id.* Therefore, the

Court construes the statute to apply broadly to when the inheritance rights of child through his father are at issue and to when the inheritance rights of a father through a biological child are at issue.

11. *Plaintiff's Brief–Response to Court's Order Doc. 110*, Document No. 111 at 7; *Plaintiff's Fourth Amended Complaint*, Document No. 44, ¶ IV.A.

as the representative of Blair's estate.[12] Therefore, as Turk is barred as a matter of law from establishing himself as an heir or serving as Blair's estate representative, he cannot amend his complaint to cure the deficiency in his capacity to sue on behalf of Blair's estate.[13] Accordingly, Blair lacks capacity to bring suit on behalf of Blair's estate under the TSS.

### 2. Turk's Standing under the TWDS

 Turk contends as Blair's biological father he has standing as a "parent" under the TWDS. Mangum contends having failed to show he is the presumed, acknowledged, or adjudicated father of Blair, Turk must prove paternity by clear and convincing evidence under the TWDS.

 An action under the TWDS is "for the exclusive benefit of the surviving spouse, children, and parents of the deceased." TEX. CIV. PRAC. & REM. CODE § 71.004(a). The term "parent" is not defined in the TWDS. See id. § 71.001. Texas courts expressly decline to incorporate the requirements of the Texas Family Code and Texas Estates Code when interpreting whether a person is within the classes of persons entitled to sue under the TWDS. See Garza v. Maverick Mkt., Inc., 768

S.W.2d 273, 275–76 (Tex. 1989) (holding "an illegitimate child need not be 'recognized' in accordance with other bodies of law not specifically applicable to the Wrongful Death Act"); Brown v. Edwards Transfer Co., Inc., 764 S.W.2d 220, 222–23 (Tex. 1988) (holding the TWDS does not engraft the Texas Probate Code's definition of "child"). A biological parent or child of the deceased can prove standing under the TWDS even if he cannot legally establish paternity under the Texas estates Code or Texas Family Code. Garza, 768 S.W.2d at 275 (involving a purported biological child of the deceased); Gurka v. Gurka, 402 S.W.3d 341, 346–47 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (involving a purported biological father of the deceased).[14] A person alleging a TWDS claim bears the burden to show standing by clear and convincing evidence. Pluet, 355 F.3d at 384 (citing Texas Supreme Court cases holding an illegitimate child can establish biological paternity by clear and convincing evidence). Texas courts have found the following evidence admissible to prove paternity: (1) blood tests; (2) evidence of the child's physical resemblance to the alleged father; (3) prior statements of alleged father admitting pa-

---

**12.** Turk is currently serving a twenty-five year term for armed robbery. Defendant Mangum's Supplemental Briefing in Support of Motion for DNA Testing (Doc. 102) to Discover Plaintiff Turk's Standing, Document No. 112, at 8.

**13.** Because Turk cannot legally establish capacity as either an heir or personal representative, the Court need not decide whether Turk pleaded and can prove that no administration of the estate is necessary, granting him capacity to sue as heir rather than a personal representative. Mangum does not contest Blair–Olaniyi's capacity to bring suit; Blair–Olaniyi has pleaded that she is an heir and that no administration of Blair's estate is necessary. Petition in Intervention of Kimberly Blair Olaniyi, Document No. 55, ¶ II.A. The Court will accept evidence at the time of trial,

or an agreed stipulation, showing that no administration is necessary from Blair–Olaniyi.

**14.** The Court has only located one case, Gurka v. Gurka, 402 S.W.3d 341 (Tex. App.—Houston [14th Dist.] 2013, no pet.), in the posture of this case where a purported father, as opposed to a purported child, of the deceased is asserting a TWDS claim. In Gurka, the parties agreed that the standard for a purported father and purported child seeking to prove standing for a TWDS claim were identical. Id. at 347 n.8. Here, although Turk contends he validly established paternity, he does not contest that the standard would be clear and convincing evidence, should the Court determine he has not established legal paternity.

ternity or other admissions by him bearing on his relationship with the child; and (4) evidence of the periods of conception and gestation. *See, e.g., Garza,* 768 S.W.2d at 276.

Texas case law does not require that every person asserting a right to sue under the TWDS must prove standing by clear and convincing evidence. *See id.* (stating "[i]f paternity is questioned" it may be proved by clear and convincing evidence). Rather, when paternity is questioned, the TWDS still provides the opportunity to prove entitlement to damages under the TWDS outside the statutory requirements to show paternity in the Texas Family Code and Texas Estates Code.[15] Mangum has questioned Turk's paternity of Blair. As discussed above, Turk—having failed to legally establish paternity—is not considered a father within the meaning of the Texas Family Code or Texas Estates Code. However, the Fifth Circuit only requires showing a biological link by clear and convincing evidence to be a "parent" within the TWDS's meaning. Therefore, Turk could have standing under the TWDS in this suit, but only if he meets his evidentiary burden to show he is Blair's father. Accordingly, the Court finds that because Mangum has questioned Turk's paternity a hearing is necessary to determine whether Turk has standing in this case. At the hearing, the Court will receive evidence and testimony from the parties on the issue of Turk's paternity of Blair.[16] Turk bears the burden to establish paternity by clear and convincing evidence.

---

15. The Fifth Circuit and Texas courts may diverge on the effect of showing that legal paternity is established under Texas law on whether a party has standing under the TWDS. In *Pluet,* the Fifth Circuit interpreted Texas Supreme Court case law interpreting the TWDS as only requiring a "biological link" without regard to whether paternity was legally established. 355 F.3d at 384 (citing *Brown,* 764 S.W.2d at 223, and *Garza,* 768 S.W.2d at 275–76). Therefore, where genetic testing excluded the deceased as the child's biological father, the child did not have standing under the TWDS. *Id.* at 384–85, 385 n.2 (although the Court found the argument waived, and it was made under the TSS standing analysis, Pluet had argued there was a valid acknowledgment of paternity under Texas law). The Court did not address the effect of any paternity acknowledgment in the portion of the opinion pertaining to the TWDS; the only relevant factor under the Fifth Circuit's analysis of TWDS standing is a biological link. *See id.* at 384. When paternity is challenged, Texas intermediate appellate courts have differed in interpreting whether legally established paternity sufficiently confers standing under the TWDS or whether a party must establish a biological link to the deceased even if paternity was legally established. Where legal paternity has been validly established, some Texas courts have held that third parties without standing to adjudicate paternity under the Texas Family Code cannot challenge paternity in a wrongful death action. *In re Dallas,* 434 S.W.3d at 654–55 (precluding third party from challenging legally established paternity and noting the party in *Gurka,* where legally established paternity was challenged under the TWDS, had standing under the Texas Family Code to adjudicate paternity); *c.f. In re J.F.S.,* NO. 12-16-00255-CV, 2016 WL 6996642, at *3–4 (Tex. App.—Tyler Nov. 30, 2016, no pet.) (mem. op.) (holding Texas Department of Family and Protective Services lacked standing under the Texas Family Code to seek genetic testing to determine paternity, where there was a valid acknowledgment of paternity in a case seeking to terminate parental rights); *but see Gurka,* 402 S.W.3d at 346–49 (affirming a trial court's finding that a party was the deceased child's biological father—where the evidence included a family court order that adjudicated paternity, admitted for the limited purpose of showing the challenged father accepted legal paternity—after the deceased's mother challenged paternity in the wrongful death action). Because Turk has not legally established paternity after the death of his purported child, the Court need not address any inconsistencies in the different approaches under state and federal law.

16. The Court will hold the evidentiary hearing on paternity prior to trial.

*C Mangum's Motion for a DNA Test Pursuant to Rule 35*

Mangum contends there is good cause under Rule 35 to compel Turk to submit to DNA testing and moves the Court for an order allowing discovery. Turk contends he validly acknowledged paternity so good cause does not exist to order DNA testing.

The Court has ordered that Turk prove at an evidentiary hearing his paternity of Blair by clear and convincing evidence in order to show he has standing. Federal Rule of Civil Procedure Rule 35 provides courts may order a party whose physical condition, including blood groups, is in controversy to submit to a physical examination. FED. R. CIV. P. 35(a)(1). The order "may be made only on motion for good cause and on notice to all parties and persons to be examined." FED. R. CIV. P. 35(a)(2).

Turk's paternity of Blair is in controversy. Therefore, the Court turns to whether there is good cause to order a DNA test. Deposition testimony from Blair–Olaniyi states that Turk was not listed on the birth certificate and Turk denied fathering Blair at the time of birth.[17] Although Turk has now submitted an affidavit in this case that states he is Blair's father, Turk never legally acknowledged paternity of Blair when it was adverse to his interest to do so prior to Blair's death. Given the evidence showing Turk denied paternity and his failure to legally establish paternity, the Court finds there is good cause to order Turk to submit to genetic testing and Mangum is entitled to the discovery. Accordingly, the Court grants Mangum's motion and orders that Turk submit to a DNA test for the purposes of determining paternity of Blair.[18]

*D. Turk's Motion for Sanctions*

Turk moves for sanctions contending Mangum's motion for DNA testing is frivolous because Turk acknowledged paternity of Blair. The Court has reviewed the motion, submissions, and applicable law and determined the motion should be denied.

### III. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that the Opposed Motion of Defendant Mangum for DNA Testing to Discover Plaintiff Turk's Standing (Document No. 102) is **GRANTED**.[19] The Court further

**ORDERS** that a hearing be held where the Court receives evidence on the issue of Blair's paternity.[20] At this hearing, Turk

---

17. Opposed Motion of Defendant Mangum for DNA Testing to Discover Plaintiff Turk's Standing, Document No. 102, Exhibit·1 at 8–9 (*Affidavit of Salvatore P. LoPiccolo, II in Support of Officer Mangum's Opposed Motion for DNA Testing to Discover Plaintiff Turk's Standing* ) (attaching deposition testimony from Blair–Olaniyi stating that Turk denied being the father while she was pregnant and at the time of Blair's birth).

18. As Turk is currently incarcerated, in a Texas state penitentiary, the Court does not order Turk to appear at a specific time and place. Instead the Court orders the parties to make arrangements for the testing to occur at the earliest possible date and inform the Court if any issue arises regarding Turk's availability to submit to the collection of DNA for testing.

19. Defendant Mangum, as proposed in his briefing, will bear the cost of the DNA testing. *See Defendant Mangum's Supplemental Briefing in Support of Motion for DNA Testing (Doc. 102) to Discover Plaintiff Turk's Standing*, Document No. 112, at 18.

20. The Court found as matter of law Turk lacked capacity to bring suit on behalf of Blair's estate. Blair–Olaniyi is the only party with capacity to sue on behalf of the estate in this suit. The evidentiary hearing to determine

bears the burden to prove he is Blair's father by clear and convincing evidence. A scheduling order for the hearing will follow.[21] The Court further

**ORDERS** that Plaintiff's Amended Response to Defendant's Motion for Blood/DNA Testing and FRCP Rule 11 Motion for Sanctions for Frivolous Filing (Document No. 106) is **DENIED.**

paternity is only relevant to Turk's claim as an individual under the TWDS. If the Court determines after the hearing that Turk has not proved paternity by clear and convincing evidence, he lacks standing to assert any claim in this suit and the Court will dismiss Turk as a party.

The Court's understanding from Mangum's briefing—and Turk does not contest the assertion—is that DNA testing can only exclude Turk as Blair's father. *See Defendant Mangum's Supplemental Briefing in Support of Motion for DNA Testing (DOC. 102) to Discover Plaintiff Turk's Standing,* Document No. 112 at 16. If the test results do not exclude Turk as Blair's father, and the parties agree, the Court will waive the evidentiary hearing and will allow written submission of the evidence necessary to prove Turk's paternity. The parties are to file a joint-motion with the Court as soon as possible if they wish to waive the evidentiary hearing and instead submit the evidence—including the DNA test results, deposition testimony and affidavits, and any additional evidence demonstrating a physical resemblance between Turk and Blair—necessary to prove paternity by clear and convincing evidence.

21. If following the return of the DNA test results, Turk wishes to voluntarily dismiss his claims in the case, he is to promptly notify the Court as it will no longer be necessary to hold a hearing.